### Parrish & Potter v. John A. Frey et al.

Decided February 16, 1898.

**1.   Homestead Exemption—Place of Business—But One Protected.**

The exemption as homestead, to the head of the family, of a lot or lots upon which he is engaged in business, does not extend to separate lots and buildings on which he is pursuing distinct lines of business.   He is only entitled to one place of business and what is inseparably connected therewith or adapted and reasonably necessary thereto.

**2.   Same.**

The head of a family who was engaged as a merchant of dry goods and groceries in one building and of hardware and tinware in another building on the opposite side of the street, owning both buildings and the lots on which they stood, joined with his wife in a designation of the latter as his business homestead, and on the faith of such designation obtained a loan which he secured by mortgage on the former.   Held, that he was not entitled to a business homestead in both establishments, and was bound by his selection; and the facts being clear, the court should have directed a

verdict upon this issue and decreed a foreclosure, and on its failure to do so the appellate court could reverse and render such judgment.

**3. Practice on Appeal—Rendering Judgment.**

Where the facts are such that the trial court should have directed a certain verdict the Appellate Court may reverse and so render it, in spite of a contrary finding below.

APPEAL from Travis. Tried below before Hon. R. E. BROOKS.

*T. W. Gregory,* for appellants.

*West & Cochran,* for appellee.

FISHER, CHIEF JUSTICE.—This suit was brought by appellants, Parrish & Potter, against John A. Frey and his wife, Ruth J. Frey, on four promissory notes for $5000 each, signed by John A. Frey, dated April 25, 1887, due respectively May 1, 1889; May 1, 1890; May 1, 1891; and May 1, 1892, payable to the order of Pollock & Pell, and by them indorsed to plaintiffs, and to foreclose a deed of trust of even date with the notes, executed by John A. Frey and Ruth J. Frey to secure their payment. The deed of trust conveyed certain ranch land in Erath County, Texas, a 640 acres tract in Runnels County, Texas, and lots Nos. 1 and 2, in block No. 6, in the town of Stephenville, Erath County, and the improvements thereon; several subsequent purchasers and lien holders were made parties defendant, among these being P. H. Brooks, Sr., P. H. Brooks, Jr., and T. F. Brooks.

Defendants John A. Frey and Ruth J. Frey filed a general denial, and special plea that when the notes and deed of trust were executed, lots 1 and 2, in block 6, in the town of Stephenville, was the business homestead of John A. Frey, wherein he was at the time conducting his mercantile business, and that the deed of trust as to it was for that reason void.

P. H. Brooks, Sr., P. H. Brooks, Jr., and T. F. Brooks answered that they were innocent purchasers for value, without notice of plaintiff's lien, of the 640 acres tract of land in Runnels County, through deeds executed subsequent to the deed of trust, and prayed that they be quieted in their title to same.

On November 30, 1896, plaintiff filed a first amended supplemental petition, answering the homestead plea of defendants John A. Frey and Ruth J. Frey, containing a general demurrer, general denial, and three special pleas. The first special plea charged, that at the time the deed of trust was executed the residence homestead of John A. Frey consisted of 200 acres of land adjoining the town of Stephenville; that said 200 acres was agricultural and pasture land, and used as such, and that Frey and his family were living upon it at the time; that it constituted a rural homestead, and therefore John A. Frey was not entitled to any business homestead. The second special plea charged in substance the facts set out in the first special plea, and further, that John A. Frey and his wife, prior to the making of the deed of trust, designated said 200

acres as their residence homestead in accordance with the statute; that they stated in their sworn application for the loan that it was their homestead and had been set apart and used by them as such for many years; that they verbally made similar representations to Pollock & Pell, who were by these acts and representations induced to make the loan; that the time the application, homestead designation, and deed of trust were executed, John A. Frey and his wife were the owners of said 200 acres, which lay in a solid body, were living on it, had their dwelling, garden, outhouses, pasture, etc., on same, and were using various portions of it for various homestead purposes; that they owned large quantities of land in Erath County, some adjoining said 200 acres; that after the execution of the deed of trust, Frey and his wife had sold and gotten beyond the reach of creditors all of said 200 acres, and all the property owned by them in Erath County and elsewhere except the property covered by the deed of trust; that said acts and representations were relied upon by plaintiffs when they purchased said notes, and that by said acts and representations Frey and his wife were estopped from denying that said 200 acres was their homestead, and same being rural and not urban in its character, or from claiming any business homestead.

The third special plea alleged that, in case John A. Frey and wife were entitled to any business homestead whatsoever, they were estopped from claiming lots 1 and 2, in block No. 2, in the town of Stephenville, as such, for the following reasons: Because, at the time the application for the loan and the deed of trust sued on were executed John A. Frey was engaged in the dry goods and grocery business and also in the hardware and tinware business in Stephenville, and had for twenty years prior thereto conducted all of his business on lot 4, in block 5; that in 1884, he built a new storehouse on lots 1 and 2, in block 6, across the street from lot 4, and moved his stock of dry goods and groceries into the new storehouse, leaving his stock of hardware and tinware on lot 4 until after the deed of trust was executed; that at the time the application for the loan was made and the deed of trust executed there were two large storehouses and a warehouse on lot 4, well suited and adapted to the purposes of a business homestead, and complete in every respect; that the new storehouse was likewise complete and well adapted to the same purposes, and that the hardware and tinware business conducted by John A. Frey in the old storehouse was separate and disconnected from his dry goods and grocery business carried on in the new storehouse; that in the application for the loan and the homestead designation, John A. Frey and his wife designated and set apart lot 4, in block 5, as their business homestead and relinquished all claims to any other, and likewise disclaimed lots 1 and 2 as any part of their homestead in the deed of trust; that Frey was entitled under the circumstances to but one business homestead, and having so selected and expressed his selection, was estopped from claiming lots 1 and 2 as such, said money having been loaned on the faith of said representations and election,

and that John A. Frey and his wife had subsequently sold and gotten beyond the reach of execution lots 4 and 5.

On November 30, 1896, John A. Frey and his wife filed a first supplemental answer, consisting of general and special exceptions, general denial, and special answer to the effect that plaintiffs had, at the time the loan was made, actual notice of the uses to which lots 1 and 2 were being put by John A. Frey.

The case was tried at the November term, 1896, and the jury returned a verdict on December 2, giving plaintiff a personal judgment against John A. Frey for $29,195.23, and foreclosing their lien upon all property covered by the deed of trust except the 640 acres of land in Runnels County, and lots 1 and 2, in block 6, which last they found was the business homestead of John A. Frey, and entitled to protection as such.

*Opinion.*—We find the following facts: John A. Frey and Ruth J. Frey, husband and wife, in April, 1887, executed a deed of trust, with other property, on lots 1 and 2, in block 6, in the town of Stephenville, to secure the notes sued on by the appellants, which instrument was properly signed and acknowledged by the appellees, and by Mrs. Frey in the manner required by law for taking separate acknowledgments of married women. The deed of trust recites that the property conveyed by the deed of trust or any part thereof is not the homestead of appellees or claimed or used or enjoyed by them as such, and that they have other property which they occupy and claim as homestead.

The notes sued upon and the deed of trust sought to be foreclosed represent a loan of money made to John A. Frey by the agents of the appellants. As an inducement to obtain the loan, John A. Frey and wife, Ruth J. Frey, on March 17, 1887, offered, with other property, lots 1 and 2, in block 6, as security for the loan, and in a written application therefor made the following statements:

"I reside with my family at Stephenville, Texas, where I have resided since 1858. I have never resided on the property proposed to be mortgaged. W. A. Millican resides on the ranch property. My homestead, which I have set apart and used as such since about 1872, is 200 acres of the John Blair survey in Erath County, Texas, and lot 4, in block 5, in Stephenville, Texas. It is insured against fire for $3700, and is worth about $5000 exclusive of improvements. I am married. My wife's maiden name was Ruth J. Counts, and my children by her are William Henry Frey, aged 14 years, and Herbert Frey, aged 4 months.

"Apart from real estate incumbrances, my debts do not exceed $35,000. I own personal estate worth about $95,000.

"The property offered is occupied as a store by John A. Frey.

"All the above statements are true to the best of my knowledge, and I understand that a loan, if granted by you, will be made on the faith of them being true."

Following the above are the signatures of John A. Frey and Ruth J. Frey, under date of March 17, 1887.

"The foregoing statements respectively subscribed and sworn to by said John A. Frey, and also by said Ruth J. Frey, she having been examined by me privily and apart from her husband, and having the instrument fully explained to her, when she acknowledged the same to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it; this 17th day of March, 1887. Before me, C. J. Shappard, Notary Public for Erath County, Texas. (Seal.)"

Also on the same day, John A. Frey and wife, in an instrument signed and acknowledged by them, designated and set apart as their residence homestead a tract of 200 acres of land adjoining the town of Stephenville, and lot 4, in block 5, in the town of Stephenville, "upon which is located my hardware store;" said designation concluding with this statement: "Hereby recognizing and setting apart the said above described land as our homestead and the homestead of our family, and relinquishing any and all homestead claims that we may or might have to any and all other lands and town lots owned by us jointly or severally."

Up to the spring of 1884, and for many years prior thereto, John A. Frey was engaged in a general mercantile business in the town of Stephenville, in frame buildings situated on lots 4 and 5, in block 5, when in the spring of 1884 he had completed a stone building on lots 1 and 2, in block 6, the property in controversy, on the opposite side of the street from lots 4 and 5; and at that time moved into the stone store his dry goods and groceries, and left remaining in the storerooms located on lots 4 and 5 his stock of hardware and tinware; and thereafter, and up to the time of making the deed of trust in question and afterwards, continued to occupy and use the buildings on lots 4 and 5 as his place of business, where he was engaged as a merchant in the sale of hardware and tinware; and also at that time occupied the new rock store on lots 1 and 2, in block 6, engaged in business as a merchant, in selling dry goods and groceries. In this latter place he kept the books of his entire business as a merchant, and he made it his headquarters, and it was regarded by him as his principal place of business.

He had during this time, besides himself, as salesmen in the rock store, three employes. In the tinware and hardware store located on lots 4 and 5 he had two clerks or salesmen.

In the summer of 1887, after the deed of trust in question was executed, he sold out part of the hardware and tinware stock in the storerooms located upon lots 4 and 5 and moved the balance into the rock store, located on lots 1 and 2, block 6, and thereafter sold lots 4 and 5. The testimony shows that lots 1 and 2, block 6, with the new rock store, was more valuable than lots 4 and 5 with the improvements thereon, and the rock store as a stand was more convenient and advantageous for the mercantile business and the rate of insurance much cheaper than the storerooms on lots 4 and 5; but we find that either place of business was well adapted to the mercantile business which John A. Frey was

then engaged in, in using said store building, and that while the rock building was generally more suitable as a storeroom, the frame buildings located upon lots 4 and 5 had been used by Frey in the mercantile business, and were not only well adapted and suitable for that business, but were reasonably convenient and suitable for carrying on a hardware and tinware business; and that said storerooms, at the time the deed of trust was executed, were actually used as a place of business by Frey as a merchant engaged in the hardware and tinware business. The stock of hardware and tinware at that time was of value about $5000. The stock of dry goods and groceries located in the rock store in controversy was worth about $15,000.

At the time that the homestead designation was made, and prior to the execution of the deed of trust, the property in question, together with that designated by John A. Frey and wife as their residence and business homestead, was inspected by the agents of appellants who made the loan. They knew that Frey was occupying both pieces of property as a merchant, and one of the agents knew that Frey had been occupying lots 4 and 5 in the general mercantile business many years prior to the time of the execution of the deed of trust, and knew that he had been occupying the rock building since the time of its erection, engaged in the dry goods and grocery business.

The facts clearly show that the loan in question which the deed of trust was executed to secure, was made upon the faith and belief of the agents in making the loan in the truth of the facts stated in the application therefor, and in the homestead designation.

We further find that Frey, when he designated lots 4 and 5 as his business homestead, was acting in good faith, with no intention upon his part to defraud his wife, and that he was not misled or deceived or entrapped by the appellants or their agents in making the designation, and he at that time was in actual use and occupancy of lots 4 and 5, as a merchant, which fact was known to the agents of appellants who negotiated the loan.

A number of questions are raised in the briefs, which are unimportant to be decided, in view of the disposition which we make of the case. The Constitution exempts to the head of the family as a business homestead the lot or lots upon which he is engaged in business; but however liberally this provision has been construed, no well-considered case has been found which has extended the business homestead exemption so as to include more than one place of business of the head of the family. It certainly was not the purpose of the Constitution to confer upon the head of the family the homestead exemption, so as to extend to and embrace any different places of business at which he might be engaged in business, and it was not the purpose that the exemption should extend to two or more different places of business. A merchant engaged in the sale of dry goods and groceries could not claim that the exemption would extend to it, as well as to another line of business then pursued by him in a separate and distinct building. He is only entitled to one place

of business, and what is inseparably connected therewith in order to its enjoyment, or that which is adapted and reasonably necessary thereto. Pfeiffer v. McNatt, 74 Texas, 641.

The hardware and tinware business in which Frey was then engaged was in buildings situated on lots upon the opposite side of the street from the lots upon which he was then engaged in the dry goods and grocery business. He could not claim that both places were exempt. If the exemption should be admitted in such a case as this, it would extend to all places of business separate and distinct from each other, in which the merchant at the time may be conducting a business. In other words, the merchant could in one building be engaged in the dry goods and grocery business, in a separate and distinct building the drug business, in another the grain and feed business, in another the hardware business, in another the saloon business, in another the wholesale business, and so on indefinitely. To establish such a principle and admit an exemption of more than one place of business would do violence to the generally accepted interpretation of the spirit and meaning of the Constitution upon this subject.

Because the hardware and tinware business that Frey was then engaged in and the buildings in which it was carried on was not as valuable and remunerative as the dry goods and grocery business, which he was conducting on the property in controversy, could have little effect in determining what place should be selected as his place of business, and would certainly not preclude him from selecting and designating the lots on which he was engaged in the hardware and tinware business as his business homestead. Acting in good faith, as the head of the family, he had the right to select the character of the business in which he would continue to engage as a merchant, and to designate the lots upon which it should be carried on. Marler v. Handy, 88 Texas, 421. And this designation, when once exercised, would be binding upon the wife, and would preclude and estop Frey from asserting the contrary, when it had been acted upon in good faith by third parties. It indisputably appears from the facts that the agents of the plaintiffs, in making the loan, did act upon this designation, and upon the faith of it they advanced the money represented by the notes sued upon to Frey. They knew at the time that Frey was occupying both properties in the usual way, as a merchant engaged in the business carried on at each place. They knew that he was entitled to the exemption of only one place of business, and that he had the right to select, when acting in good faith, which of the two he should designate as his business homestead. When he exercised this privilege and thereby led the plaintiffs to advance the money under the designation, which under all the facts and circumstances they knew he had the right to make, and which was in fact made in good faith, it would be most inequitable to permit him now to assert the contrary. Clearly, under such circumstances, he would be bound by the selection and designation, and would be estopped from asserting the business homestead right in the property in controversy.

The appellants requested the court, in view of this theory of the case, to instruct the jury that appellees would be estopped from asserting a homestead exemption in the property in controversy, which the court refused to give. This charge should have been given, and in view of the facts as found and the principles of law applied thereto it only remains for this court to determine what result is proper to be reached in this court.

Whatever rights the appellees may have have been thoroughly developed, and it is not supposed that their case can be made stronger than as shown by the facts in the record. The evidence of appellee John A. Frey, who is best supposed to know and be familiar with his supposed rights and the nature and extent of the occupancy of the business lots then used by him, indisputably establishes the facts as found by this court; and in the minds of men of ordinary intelligence no other or different conclusion could be reached. Such being the case, it would be a useless and idle ceremony to reverse and remand, for an application of the principles of law to the established facts would inevitably lead to but one conclusion, and that favorable to the appellants. Consequently, it must be admitted that the trial court should have peremptorily instructed a verdict in favor of the plaintiffs, with the result of a judgment in their favor. Every fact necessary to a judgment in the plaintiffs' favor is established by the record; consequently, there is no need to remand the case to ascertain some matter of fact; but we are, when the record is in this condition, empowered to render just such judgment as the court below should have rendered. Rev. Stats., art. 1027.

We are not unmindful of what has been said by the Supreme Court upon the want of power in the Courts of Civil Appeals to find the facts differently from those found by a jury, and, thereupon, reach a different conclusion. But it is not believed that those decisions are applicable here; for it is a well established rule of practice that when there is no conflict in the evidence, or controversy as to what is established by the facts, and the law, when applied thereto, can only lead to one conclusion, the appellate courts have the power to so declare it and render a judgment in accord with what should be the inevitable result. Adoue v. Tankersly, 38 S. W. Rep., 347; Stevens v. Masterson, 39 S. W. Rep., 292; Patrick v. Smith, 90 Texas, 274; Choate v. Railway, 37 S. W. Rep., 319; Eason v. Eason, 61 Texas, 226; Railway v. Stewart, 57 Texas, 170.

Therefore, we reverse the judgment of the trial court and here render a judgment for the amount recovered by the plaintiffs in the judgment below, and foreclose their lien and deed of trust on the lots and property in question, in addition to that described in the judgment of foreclosure entered by the trial court.

*Reversed and rendered.*

Writ of error refused.