**DENTON COUNTY et al. v. SAULS et ux.**
(No. 6796.)

(Court of Civil Appeals of Texas. Austin.
Oct. 22, 1924.)

**1. Appeal and error ⟨⟩374(4)—Road district may appeal without giving bond.**

Rev. St. art. 637, making road districts bodies corporate, "which may sue and be sued in like manner as counties," confers on them every right or privilege conferred on county in conduct of suit before trial or appellate courts, including right to appeal without giving bond.

**2. Homestead ⟨⟩118(2)—Husband cannot create perpetual right of way easement materially interfering with wife's enjoyment of community homestead, without her joinder.**

Husband cannot create perpetual right of way easement over community homestead, without wife's joinder, if her use and enjoyment thereof is thereby materially interfered with.

**3. Eminent domain ⟨⟩266—Appropriation of property for right of way by road district under agreement with owners held not tort.**

Appropriation of property by road district for right of way, under agreement with owners, suing to enjoin construction of· road, waiving formalities of condemnation proceedings, and eliminating all issues except those involving right of appropriation without condemnation and amount of recovery under condemnation, held not tort, for which road district, under Rev. St. art. 638, is not liable; agreement having made suit essentially one in condemnation.

**4. Eminent domain ⟨⟩121—County liable to compensate owner of land for right of way taken by road district.**

That land was taken for right of way by road district, instead of entire county, held immaterial, as respects county's liability for compensation, as county, which alone had power of eminent domain, could exercise it for benefit of road district alone, in which case procedure and measure of recovery are same as if exercised for benefit of entire county.

**5. Evidence ⟨⟩543(3)—Witnesses knowing value of farm and other farms in community, qualified to testify as to effect of cutting highway through farm.**

Witnesses knowing farm, its location, character, and extent of improvements, character and quality of land, and value of farm lands in community, are qualified to testify as to effect of cutting highway through farm on its use and value thereafter.

Appeal from District Court, Denton County; C. R. Pearman, Judge.

Suit by J. T. Sauls and wife against Denton County and Road District No. 3 thereof. Judgment for plaintiffs, and defendants appeal. Affirmed.

Robert H. Hopkins and Ben W. Boyd, Co. Atty., both of Denton, for appellants.

Owsley & Owsley and Sullivan, Speer, & Minor, all of Denton, for appellees.

McCLENDON, C. J. The appellees, J. T. Sauls and wife, instituted this suit against the appellants, Denton county and road district No. 3 of Denton county, to enjoin them from constructing a public road across a tract of land which was community ·property and homestead of appellees. After the suit was brought an agreement was made between appellants and appellees under which the former were permitted to construct the road without the necessity of condemnation proceedings, and the suit could proceed to determine whether appellants had the right to appropriate the land under an agreement signed by appellee J. T. Sauls, and if not, to ascertain the amount of damages to the land as in condemnation proceedings. The case was tried to a jury upon special issues, and upon their answers a joint and several judgment was rendered against both appellants in favor of appellees for $3,350. From this judgment the county and road district have appealed.

The following statement from the record will suffice to a proper presentation of the questions presented by the appeal.

Some time prior to November, 1919, road bonds had been issued by road district No. 3 in Denton county, and it was proposed to construct a highway from Denton to Aubrey. There was an old road commonly known as the Green Valley road, extending from Denton in a northeasterly direction and passing the Green Valley schoolhouse which was located in a community known as the Green Valley community. Another road also in a northeasterly direction from Denton passed through Mingo and was known as the Fish Trap road. A number of petitions were filed with the commissioners' court, requesting that the highway be designated over certain routes respectively; among them was a petition signed by the residents in the Green Valley community. Along with this petition was an agreement of the parties signatory to denote the right of way for the road. The petition and agreement were dated November 5, 1919, and filed with the commissioners' court November 26, 1919. The petition reads as follows:

"We, the undersigned property taxpayers of Denton county, Texas, residing on or near, and having property interests along the proposed highway hereinafter named, respectfully petition your honorable body to designate and construct a highway leading from the city of Denton, Texas, to Aubrey, thence to Pilot Point, from said city of Denton and extending along Bell avenue in said city; thence in a general north direction through what is known as the Green Valley neighborhood to the said town of Aubrey—the said proposed route being what is generally termed the Green Valley route.

"We believe that· such highway would serve

more people and would be more easily and less expensively maintained than any route for such a highway from the city of Denton to the said town of Aubrey. Respectfully submitted:"

The agreement reads as follows:

"To the Honorable Commissioners' Court of Denton County:

"We, the undersigned land owners, hereby agree severally to donate, free of cost, to Denton county a right of way for the highway to be designated and constructed from Denton to Aubrey, in Denton county, Texas, provided said highway shall be so designated and constructed across and over our respective tracts of land.

"It is understood that this agreement is made in severalty and each of the subscribers hereto binds himself as to the donation of the land owned by him.

"We respectfully pray your honorable body to designate and construct said highway along what is known as the 'Green Valley' route and, as an inducement for our petition so to designate and construct said highway, we hereby agree to donate such right-of-way as above herein set forth."

Both the petition and agreement were signed by appellee J. T. Sauls, but neither was signed by his wife.

Shortly after the filing of these agreements the commissioners' court ordered the highway built via the "Green Valley Route," and instructed the engineers to survey the line. This was done and several surveys were made, each of which passed over appellees' land. One or more of them passed to the west of their residence, and another which was finally adopted entered appellees' land near its southwest corner, and cut diagonally through it, passing out near the northeast corner. The land in question was practically in a square, and contained approximately 160 acres. The Green Valley road extended the entire length of its western boundary, and thence north for about two miles, when it turned east toward the schoolhouse. The route of the highway as finally adopted followed generally the course of the Old Green Valley road from Denton to the southwest corner of appellees' land. It crossed and recrossed the Green Valley road a number of times, cutting out corners, straightening curves, etc. The Green Valley schoolhouse was about three miles north of appellees' land. From the point where the highway enters appellees' land on the southwest, it leaves the Green Valley road to the left, and does not touch that road again until it reaches a point some two and a half or three miles beyond the Green Valley schoolhouse. From this point back to the southwest corner of appellees' land, the highway is from a quarter of a mile to a mile and a half distant from the Green Valley road. The Green Valley schoolhouse cannot be reached by the highway, but may be reached by turning off the highway and traveling on a side road about half a mile. By the old Green Valley road the distance from Denton to Aubrey was about fourteen miles, and appellees' residence was about half way between the two places. The new highway shortened the distance between Denton and Aubrey by between one and two miles.

The evidence abundantly supports the following findings with reference to the effect of the highway upon appellees' farm. This farm was well improved with residence, barns, orchard, etc. The residence was situated in its northwestern portion, and the farm land extended across the entire northern portion, leaving a strip of pasture land across the south end, containing about 30 acres. Near the southwest corner of the farm, and situated in the pasture, was a spring which furnished water for appellees' stock. A lane led from the residence to the pasture, and stock turned loose at the residence could pass through the lane into the pasture, where they could water at the spring and graze at will. The construction of the highway cut off a few acres including the spring from the rest of the pasture, thus necessitating the use of gates and the driving of the stock from the main pasture to the spring for water. The farm was also cut in two diagonally, thus leaving the farm in the shape of two triangles, which very materially interfered with its cultivation as compared with the situation prior to the construction of the highway. The amount of land actually taken by the road was approximately 5 acres, the value of which the jury fixed at $550. The damage done to the rest of the land, over and above all benefits from the construction of the highway, as found by the jury, was $2,800, or about $18 an acre.

The evidence showed that appellee J. T. Sauls was very anxious for the highway to be designated through the Green Valley neighborhood, and had made statements that he would be willing to move his house, if necessary, to accomplish that end. As soon as he ascertained, however, that it was contemplated to construct the highway diagonally through his farm and cut off his spring from the rest of the pasture land, he protested to the commissioners' court, and repudiated the agreement as being susceptible of the construction that it gave the right to construct the highway in that manner. The commissioners' court, however, entered an order to the effect that appellee J. T. Sauls would be held to his contract. Appellants then proceeded to construct the highway as thus designated, and were about to invade appellees' premises when the injunction suit was filed. At this stage of the proceedings, appellants and appellees executed the following agreement:

"It is agreed by and between the parties plaintiff and defendants in this cause that this suit was originally instituted by the plaintiffs

against the defendants seeking to restrain them from entering plaintiffs' premises and constructing a road and highway across the same; that no previous condemnation proceedings had been instituted and prosecuted therein and the defendants claiming the right thereto under a certain instrument signed by plaintiff J. T. Sauls and others, a copy of which is attached to defendants' answers herein; the plaintiffs denying their right to enter and appropriate their lands under said instruments; it was subsequently agreed that, in that the defendants needed the lands and location for said road, and expected to condemn and take it if their right to take it were denied in this suit, all formalities of a condemnation proceeding should be waived and defendants would construct the road over the objections of plaintiffs, and that all formalities of presenting claims and demands by plaintiffs and objections to awards be waived and the suit could proceed to determine if defendants had the right to take and appropriate said lands for road purposes under the instrument pleaded by them, and if not to determine the amount of plaintiffs' damages to their lands for that taken and the residue thereof."

The only question submitted to the jury, other than the extent of appellees' damage, was the following, which the jury answered in the affirmative:

"Do you find from a preponderance of the evidence that the locating and constructing of the highway across plaintiff's premises as it has been located and constructed by defendants materially interferes with the use and enjoyment of the premises of plaintiffs?"

Appellants requested certain special charges submitting the issue, whether the highway as laid out was in the general course of the road then extending to Green Valley, and was the route contemplated by the parties in executing the agreement. These charges were refused.

[1] Appellees contend that the appeal should be dismissed as to the road district, because no appeal bond was filed in its behalf, it being urged in this regard that article 637, Revised Statutes, does not confer upon road districts the right to appeal without bond. That article provides that the road districts are made and created bodies corporate, "which may sue and be sued in like manner as counties." We think it was the intention of the Legislature in enacting this article to confer upon road districts every right which a county has in bringing and defending suits, and to apply to such suits the procedure applicable in case the county were a party. A road district is but a subdivision of the county, created for the purpose of taxation within the district for county purposes, that is, the construction of roads. The affairs of the district are almost exclusively conducted by the commissioners' court, and for all practical purposes it is a branch or subdivision of the county within its territorial limits. The language "in like manner" is broad enough, we think, to include every right or privilege conferred upon a county in the conduct of a suit before the courts, both trial and appellate, including the right to appeal without giving bond. The question is rendered unimportant in the present case, however, by the conclusion we have reached as to the proper disposition of the case on its merits.

[2] We have reached the conclusion that, regardless of whether the route designated by the commissioners' court was in compliance or substantial compliance with the contract of J. T. Sauls, that agreement was void under the jury finding that the highway as located and constructed "materially interferes with the use and enjoyment of the premises."

It is now the settled law of this state that the husband has the power to create a perpetual right of way easement over the homestead, the title to which is in the community, without the joinder of the wife, provided the exercise of such right does not destroy the homestead or materially affect it as such; or, as expressed in some of the cases, provided it does not operate to interfere with the enjoyment of the homestead by the wife. Randall v. Ry., 63 Tex. 586; Ry. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Orrick v. Fort Worth (Tex. Civ. App.) 32 S. W. 443; Houston v. Bammel, 53 Tex. Civ. App. 336, 115 S. W. 661; Purdie v. Ry. (Tex. Civ. App.) 144 S. W. 364. This rule has been followed by the courts of Iowa; but in other states, in which the husband alone is denied the power to alienate or incumber the homestead, it is held that the wife must join in granting a perpetual right of way over the homestead property. For the authorities on this subject, see Delisha v. Minneapolis, St. Paul, Rochester & Dubuque Electric Co., 110 Minn. 518, 126 N. W. 276, 27 L. R. A. (N. S.) pp. 963, 964.

In all the Texas cases upon the subject, however, the rule above announced is qualified by the proviso that the easement does not materially interfere with the use and enjoyment of the homestead, and by inference we think it clear that if the easement does materially interfere with the use and enjoyment of the homestead, the joinder of the wife is necessary.

In the case of Ry. v. Lewis (Tex. Civ. App.) 85 S. W. 817, in which a writ of error was denied by the Supreme Court, a right of way granted by the husband alone across a portion of city lots which was used as a garden, horse lot, etc., in connection with the home, was held void.

The findings of the jury that the highway as constructed "materially interferes with the use and enjoyment of the premises of plaintiff," is abundantly supported by the evidence. Under that finding we hold that the agreement of J. T. Sauls alone to donate the right of way was void.

[3] Appellants contend that the road district is not liable to appellees, under R. S. art. 638, which provides that such districts shall never be held liable for torts. Appropriation of appellees' property was in no sense a tort. The appropriation was made under and by virtue of the agreement of the parties, which made the suit to all intents and purposes one in condemnation; all formalities of such proceeding being waived, and every issue being eliminated except those involving the right of appropriation without condemnation, and the amount of recovery under condemnation.

[4] It is further contended that the court erred in rendering judgment against the county for the reason that the land was taken by the road district, and not by the entire county. Under the agreement we think it is immaterial for whose benefit the land was taken. The road district did not have the power of eminent domain, and that power could only be exercised by the county. The latter might do so for the benefit of the entire county, or for the benefit of the road district alone. In either event the procedure would be the same, and the measure of recovery the same. The only question, therefore, which this particular contention raises is whether the damages thus recoverable were payable out of the general county funds or those of the road district. The record shows that the county and the road district were acting together in the entire matter, were defending the suit jointly, and have prosecuted a joint appeal. The funds of the road district as well as those of the county are controlled and administered by the same body, the commissioners' court; and it was within the province of that court to determine from what fund it would pay the damages assessed in a condemnation proceeding which it instituted. Appellees without question had the right to require payment from the county in such proceeding, regardless of who was the ultimate beneficiary therein. The agreement under which the suit was tried clearly limits the questions in the case to two only: First, whether the appellants acquired the right of way under the agreement signed by J. T. Sauls; and, if not, the amount to which appellees would be entitled in a condemnation proceeding. A determination of the first question against appellants, and a finding upon the second, establishing the amount of appellees' damage necessarily, under the agreement, carried full authority in the court to enter judgment against both appellants. This agreement was made for the purpose of permitting appellants to proceed in the construction of the road without delay, and expressly eliminated all question of practice and procedure, leaving for determination only the issues expressly stated in the agreement. Such agreements

are highly commendable, and should be encouraged by the courts. The question of ultimate liability was evidently one which the appellants were perfectly willing to adjust between themselves without resorting to the court.

[5] The only other question presented by the appeal is found in appellants' first proposition which reads as follows:

"A question of material inquiry was as to the value of the plaintiffs' land immediately after the road had been constructed through the same, and the court erred in permitting testimony to be introduced as to that value and the consequent damage without having first required the witnesses testifying to qualify as experts on the value of land cut as was the land of the plaintiffs."

The question thus raised is clearly without merit. Witnesses who knew the farm" in question, its location, the character and extent of improvements, and the character and quality of the land, and were qualified to testify to the value of farm lands in the community, were certainly qualified to testify to the effect the cutting of the highway through the farm would have upon its use and value thereafter.

We find no error in the record, and the trial court's judgment is affirmed.

Affirmed.