**GATES et al. v. PITTS et al. (No. 2923.)**

Court of Civil Appeals of Texas. Amarillo. Nov. 30, 1927.

Rehearing Denied Jan. 4, 1928.

1. Homestead ⬤➾70—Merchant conducting general merchandise store held not entitled to claim second separate place of business as business homestead exempt from forced sale.

Merchant conducting general merchandise store, selling dry goods and groceries, *held* not entitled to claim second separate place of business as business homestead, exempt from forced sale, since such merchant is only entitled to one place of business and what is inseparably connected therewith.

2. Homestead ⬤➾118(3),—Husband may contract for public easement over community homestead without wife's concurrence, if use for homestead purposes is not materially affected.

Husband may contract, without wife's concurrence, for an easement in the nature of a street or highway over community homestead property provided it does not materially interfere with wife's use of property for homestead purposes.

3. Appeal and error ⬤➾171(1)—Case must be reviewed on theory on which it was tried.

Where case was tried on theory that homestead was urban, appeal court must review case on same theory.

4. Homestead ⬤➾60—Homestead property which had become part of townsite held to have become urban.

Where homestead property had become part of a townsite, it was *held* to have become urban.

5. Homestead ⬤➾123—Whether or not dedication deed of plat including property claimed as urban homestead was nullity because wife did not join it was vitalized by wife's joining in conveyance to bank to secure loan for establishing garage on lot inconsistent with homestead claim.

Whether or not dedication deed of plat including property claimed as homestead was a nullity because wife did not join husband in its execution, it was in any event vitalized when both impliedly abandoned homestead rights by conveyance to bank to secure loan for establishing garage and filling station on lot, which purpose was ultimately carried out, notwithstanding some furniture was stored in garage and dwelling was lighted from electric system installed there.

6. Homestead ⬤➾57(3)—Evidence held to sustain jury's finding that plaintiff was using former homestead lot as place of business for garage and filling station not as homestead.

In suit to restrain sale of property on foreclosure of attachment lien, evidence *held* to sustain jury's findings that plaintiff was using former homestead lot as place of business for garage and filling station, and had not abandoned such use with intention of using lot principally as homestead property.

Appeal from District Court, Motley County; J. H. Milam, Judge.

Injunction suit by Mrs. W. B. Gates and another against D. E. Pitts and another. Judgment for defendants, and plaintiffs appeal. Affirmed.

See, also 291 S. W. 948.

Bouldin & Fish, of Matador, for appellants.

Hamilton & McMath, of Matador, for appellees.

HALL, C. J. The appellee Pitts recovered a judgment in the county court of Motley county against W. B. Gates, one of the appellants, and foreclosed an attachment lien on lot 1, block 18 in the town of Flomot in said county. An order of sale was issued and levied on the lot by the sheriff, and this suit was instituted by Mrs. Gates, joined by her husband, W. B. Gates, in the district court of Motley county, against the sheriff and Pitts, for an injunction restraining the sale of the property under the order of sale and against Pitts for damages.

The ground of the injunction was that the

property levied upon was the homestead of the plaintiffs and was not subject to forced sale. The appellees answered, alleging in substance: That after acquiring the land described in their petition, plaintiff Gates, as the head of a family, joined in a dedication deed and plat with other grantors, whereby certain streets, lots, blocks, and alleys were dedicated in establishing the town of Flomot upon lands owned by the grantors in the dedication deed. That said deed and plat were duly recorded in the records of Motley county. That eight and a fraction acres of Gates' land was included in the town plat. That, as platted, a street ran eastward from Gates' residence known as Gates street, and was 75 feet wide. That on the north side of this street were situated Gates' general merchandise store and post office, facing on Main street, and that Main street ran north and south. That across Gates street south of his store was lot 1, block 18, involved in this suit. This lot faced eastward on Main street. That in 1924, Gates had purchased a building previously used as a garage by other parties, and moved it upon the lot in question. That he had laid a concrete floor in the building 30 by 50 feet and had an office cut off in one corner thereof about 14 feet square, and a shed built in front for a driveway. That the building was equipped with underground gasoline tank, visible overhead distribution tank, a Delco dynamo, and all tools and equipment for repairing automobiles, including an air compressor and accessories and parts of automobiles usually carried by such establishments. That his stock of accessories had been bought on wholesale terms. That he had employed a mechanic to conduct the business as a public garage and filling station, serving the public generally from about August 24th until March 1, 1926. It was shown that he had purchased from $800 to $1,000 worth of gasoline and oil per month during that period, and that the debt which formed the basis of the county court judgment was for such supplies sold him by Pitts to carry on his garage business. The appellee further charged that Gates had, for several years, exercised his calling and occupation as a merchant at his store, and was still so engaged, and that the store constituted his business homestead at the time of the levy of the attachment, and that when said lot 1, block 18, was devoted to the business of a public garage, it being disconnected from his residence or his store by the street, it was a separate business enterprise and ceased to be a part of his urban homestead; that at the time Gates had purchased the building which he moved upon said lot, he borrowed money from a bank to pay for the same and executed a deed of trust on the lot and building to secure the loan; that Gates' homestead was an urban homestead, being in a town of from 300 to 500 inhabitants.

The case was submitted to a jury on special issues, the substance of the findings being as follows:

(1) That after acquiring the property in question, Gates operated and permitted others to operate the garage and filling station on said property, with the intention thereafter to devote the property to the principal use of a place of business;

(2) That Gates had not, at the time the writ of attachment sued out by Pitts was levied upon the property, abandoned the use of said lot as a place of business, with the intention thereafter of using it principally as a part of his homestead.

Based upon this verdict, the court denied the injunction, but stayed the execution of the order of sale pending the appeal.

From this judgment, Gates and wife have brought the controversy to this court.

[1] The statement of facts shows that the appellant Gates, together with other landowners, executed and recorded a dedication deed and plat, which divided his property, with that of the other landowners, into lots and blocks, constituting the plat of the town of Flomot, and that lot No. 1, involved in this suit, is on the northeast corner of block 18. This lot fronts on Main street, which runs north and south, and Gates street, running east and west, is the north line of this lot and of block 18. An alley runs through the block from north to south, separating this lot from the west half of the block, upon which Gates' dwelling, barn, barnyard, and poultry house are built. Lot 1 is not in the curtilage used by appellants as their homestead, but is outside of the inclosure. The building used by Gates as his store and in which his general mercantile business was conducted is across Gates street and north of block 18, and also fronts on Main street, so if lot No. 1 is exempt, it must be protected, not as a business homestead, but as a part of the residence property; for the reason that a merchant engaged in selling dry goods and groceries cannot claim another place of business separate or distinct from it as being exempt. He is entitled to only one place of business and what is inseparably connected therewith in order to its enjoyment. Pfeiffer v. McNatt, 74 Tex. 641, 12 S. W. 821; Parrish v. Frey, 18 Tex. Civ. App. 271, 44 S. W. 322; McDonald v. Campbell, 57 Tex. 614; Woeltz v. Woeltz (Tex. Civ. App.) 57 S. W. 905; Wingfield v. Hackney, 30 Tex. Civ. App. 39, 69 S. W. 446; Gibbs v. Hartenstein (Tex. Civ. App.) 81 S. W. 59.

[2, 3] Then the question is, can the appellants claim this lot as exempt from forced sale, because it was in fact, and in a legal sense, a part of their homestead? In attempting an answer, it is necessary to state some of the fundamental principles of law which govern it and their relation to the facts in the record, and whether these facts

sustain the jury's findings. The husband has the power, without the concurrence of the wife, to contract for an easement in the nature of a street, highway or even a railroad right of way over a part of the community homestead, provided it does not materially interfere with the wife's use of the property for homestead purposes. Orrick v. City of Fort Worth (Tex. Civ. App.) 32 S. W. 443; Denton County v. Sauls (Tex. Civ. App.) 265 S. W. 1091. The appellants did not, either by their pleadings or evidence, insist that the wife's use of the homestead was, in any way, materially interfered with by converting the homestead from rural into urban property, and the use by the public of the streets shown upon the plat. The case was tried upon the theory acquiesced in by all parties that the property had become urban, and Mrs. Gates does not claim lot No. 1 as being any part of her rural homestead, so the controversy must be reviewed here upon the same theory. Kistler v. Latham (Tex. Com. App.) 255 S. W. 983; Boatner v. Ins. Co. (Tex. Com. App.) 241 S. W. 136, and authorities cited.

[4] For this reason and the further reason that the property had become part of a townsite, the rights of the parties must be so considered. O'Fiel v. Janes (Tex. Civ. App.) 220 S. W. 371; Jones v. First National Bank of McAllen (Tex. Com. App.) 259 S. W. 157.

[5] If it be admitted that the dedication deed was, as to Mrs. Gates, a nullity, because she did not join her husband in its execution, it was thereafter vitalized as to lot No. 1, when they both impliedly abandoned it by conveying it to the Quitaque Bank for the purpose of securing a loan for $1,000, to be used in establishing and equipping a public garage and filling station on the lot, and in ultimately carrying out their purpose, such use being inconsistent with the claim of an urban family homestead, and the principal use of such lot being a garage and filling station, which was leased to and run by third parties, notwithstanding the further fact that they stored some discarded furniture in a part of the building and lighted their dwelling from the Delco electric system installed in the garage. Torres v. Cuneo (Tex. Civ. App.) 53 S. W. 828; Williams v. Cleveland, 18 Tex. Civ. App. 133, 44 S. W. 689; Lipscomb v. Adamson Lumber Co. (Tex. Civ. App.) 217 S. W. 228; Blum v. Rogers (Tex. App.) 15 S. W. 117; Heatherly v. Little, 21 Tex. Civ. App. 664, 52 S. W. 980; Levy v. Lacour, 43 Tex. Civ. App. 191, 94 S. W. 380; Allen v. Whitaker (Tex. Sup.) 18 S. W. 160; Hendrick v. Hendrick, 13 Tex. Civ. App. 49, 34 S. W. 804; Wynne v. Hudson, 66 Tex. 1, 17 S. W. 110; O'Brien v. Woeltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829; Blair v. Park State Bank, 61 Tex. Civ. App. 441, 130 S. W. 718; Medlenka v. Downing, 59 Tex. 32.

[6] The plat made by Mrs. Gates and made a part of the statement of facts shows that the lots constituting the west half of block 18, where the dwelling and outhouses are situated, are separated from the east half, where the garage and filling station is located by a yard fence built along the west line of the alley, and that no fence incloses the garage and filling station. It is 80 feet from this fence and about 150 feet from the residence. While there is a garden fence on the south end of the east half of block 18, this fence does not inclose the garage and is about 30 feet south of it.

Paul Landry, a mechanic, testified that he commenced working in the garage about May 1, 1924; that he worked upon a salary part of the time and for a percentage the remainder of the time. He stated that the building was equipped with a dynamo, engine, air compressor, and all tools necessary to operate a public garage; that the garage was operated under the name of "Red Post"; that they also stored cars in the garage, which would hold ordinarily from 10 to 15 cars, according to their size; that they charged for storing cars and for whatever work was done there; that they also sold gas and oil to the public; that at no time during the period in which he worked there did Mr. Gates occupy anyway near one-half of the building for storing his discarded furniture, automobile, and two trucks, which appellants' sons used in doing general hauling for the public.

W. F. Allen, who sold the building which was afterwards moved upon lot 1, and equipped for the garage, testified that at the time Gates bought the building from him, he said he wanted to use it as a garage and did use it as such, serving the public; that soon after the building was moved onto lot 1, Gates moved an underground gasoline tank from in front of his store down to the garage; that he did not have a visible tank at that time, but afterwards put a visible tank in front of the garage, from which he sold gasoline and oil to the public, like any other garage, and continued to do so for a period of about two years; that during the period after the garage ceased to operate and the time the attachment was levied, he heard Mr. Gates say that he wanted to rent the garage to some one.

Pitts testified that Gates' general store was separated from the garage by a street 75 feet wide, and that the latter was about 150 feet from the family residence; that in the space between the residence and the garage was located wagon scales or platform scales, and because there was no fence around the garage or the scales, trucks and wagons could drive around to the scales without having to go through any fence or gates; that the Delco electric lighting system was installed after he commenced selling oil and gas for the operation of the ga-

rage; that Gates ordered some of the oil and gas, and Landry and the boys would also give him orders for it; that the Delco plant is stationary and is situated in the garage and was necessary to its operation; that it had a connection for recharging batteries like any other public garage, but that Gates used light generated by the system for his dwelling after it was installed.

We think these facts are sufficient to sustain the finding of the jury and overrule appellants' propositions urged upon this ground.

The two issues submitted to the jury and answered comprehend material findings necessary to support the judgment, and the court did not err in refusing to give the special issues requested by the appellants.

The judgment is affirmed.