**In re James Thomas WEBB, Sr., and Verda Faye Webb, d/b/a Webb Auto Supply, Debtors.**

**James Thomas WEBB, Sr., and Verda Faye Webb, d/b/a Webb Auto Supply, Plaintiffs,**

**v.**

**RESERVE LIFE INSURANCE COMPANY, Defendant.**

**Bankruptcy No. 589–50661–7.
Adv. No. 589–5108.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Sept. 24, 1990.*

* This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bank-

Robert St. Clair, Curry, Curry & Robinson, Lubbock, Tex., for debtors.

R. Byrn Bass, Jr., Harding, Bass, Fargason & Booth, Lubbock, Tex. and Roger Fuller, Strasburger & Price, Dallas, Tex., for Reserve Life.

### MEMORANDUM OF OPINION ON HOMESTEAD

JOHN C. AKARD, Bankruptcy Judge.

The Debtors claimed a business homestead in retail property and asserted that the lien Reserve Life Insurance Company (Reserve) held was invalid. Having deter-

ruptcy Rule 7052.

mined that the lien is valid, the court denies the Debtors' complaint.

### Facts

James Thomas Webb, Sr., and Verda Faye Webb, d/b/a Webb Auto Supply (Debtors) filed for relief under Chapter 7 of the Bankruptcy Code on November 7, 1989.[1] In this Chapter 7 proceeding the Debtors claimed three parcels of property as their residence and business homestead, namely, (1) their residence at 708 Sunset Lane, Lubbock, Texas, (2) a place of business at 1602 Avenue F, Lubbock, Texas (Avenue F property) and (3) the property upon which Reserve Life has a lien and which is located at 3310, 3312 and 3314 34th Street, Lubbock, Texas (34th Street property). The parties stipulated that the total surface area of all three tracts did not exceed one acre. There were no objections made to the claimed exemptions in the Chapter 7 proceeding; therefore, they were allowed.

The evidence did not reveal when the Debtors acquired their residence at 708 Sunset Lane. They purchased the Avenue F property in 1959. At that time there was a building located on the property. The Debtors purchased the 34th Street property on May 16, 1969. The center building previously was used as a grocery store. Mr. Webb erected the buildings on either side of the central building after he purchased the property.

On December 18, 1980, the Debtors gave a deed of trust on the 34th Street property to the First National Bank at Lubbock (FNB) to secure a note in the principal sum of $101,250.00. The Debtors used the proceeds of that loan as operating capital for their proprietorship auto supply business. On May 28, 1981, the Debtors gave a deed of trust to Eureka Life Insurance Company of America (Eureka) to secure a note in the same principal amount payable to Eureka. The Eureka note and deed of trust renewed and extended the FNB note and deed of

trust. Reserve is Eureka's successor. The Debtors made a homestead designation in connection with the Eureka note which designated 708 Sunset Lane as their residence homestead and the Avenue F property as their business homestead. It specifically disclaimed the 34th Street property as business homestead.

### Discussion

Prior to 1983 the Texas Constitution and statutes allowed as exempt to each family in an urban area, a place of residence for the family and/or a place for business of the head of the family so long as the value of the land did not exceed $10,000.00.[2] The land was valued at the time of the homestead designation. At hearing, the testimony indicated that the 708 Sunset Lane property became the residence homestead at the time it was acquired and that the Avenue F property became the business homestead at the time it was acquired. However, there was no evidence adduced as to the value of the land at the time of acquisition, nor was any evidence heard on its value at the time the Debtors acquired the 34th Street property.

Mr. Webb dismissed the homestead affidavit executed in connection with the Eureka note by saying that when he went to the title company he was not represented by counsel and that he signed whatever documents were placed before him. Assuming this is true, he is charged with knowledge of the facts contained in the documents which he signed before a notary public as well as with knowledge of their legal effect. *Hampshire v. Hampshire,* 485 S.W.2d 314 (Tex.Civ.App.—Fort Worth 1972, no writ); *Thrasher v. Cothren,* 104 S.W.2d 523 (Tex.Civ.App.—Eastland 1937, no writ); Tex.Civ.Prac. & Rem.Code Ann. § 121.004 (Vernon 1986). Mr. Webb is literate and he is a businessman. If he chose to sign documents without benefit of

---

1. Originally, on April 4, 1988, the Debtors filed a proceeding under Chapter 11, No. 588–50191–11. It was converted to Chapter 7 on December 13, 1988 and dismissed on April 25, 1989.

2. *See* McKnight, *Texas Homestead Law,* 17 Tex. Tech.L.Rev. 1307 (1986).

counsel, that was his decision and he must bear its consequences. *Estes v. Republic National Bank,* 462 S.W.2d 273 (Tex.1970). In 1980 or 1981 Reserve, looking at 708 Sunset Lane and at the Avenue F property, could reasonably have assumed that the value of the surface of those properties at the time of their designation as homestead was $10,000.00 and, thus, that the 34th Street property was not homestead. Mr. Webb's homestead affidavit indicated this was the case. Therefore, the lien was valid at its inception.

In 1983, the Texas Constitution and statutes changed the urban homestead definition to one acre of land.[3] The Texas Constitution homestead provision reads as follows:

> The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots amounting to not more than one acre of land, together with any improvements on the land; provided, that the same shall be used for the purpose of a home, or as a place to exercise the calling or business of the homestead claimant, whether a single adult person, or the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired.

Tex. Const. art. XVI, § 51. The urban homestead provisions were carried forward into § 41.002 of the Texas Property Code which reads as follows:

> (a) If used for the purpose of an urban home or as a place to exercise a calling or business in the same urban area, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than one acre of land which may be in one or more lots, with any improvements thereon ...

(d) The definition of a homestead as provided in this section applies to all homesteads in this state whenever created.

Texas courts have upheld the retroactive effect of the constitutional provision and statute. *In re Starns,* 52 B.R. 405, 413 (S.D.Tex.1985) (Randall, Circuit Judge sitting by designation); *In re Barnhart,* 47 B.R. 277 (Bankr.N.D.Tex.1985). *See also Truman v. Deason (In re Niland),* 825 F.2d 801 at 806–07 n. 2.

■ Both the Constitution and statute refer to the business homestead as "a place" to exercise the calling or business of the homestead claimant. The term "place" has been defined to mean one place; that is to say, the place of business must be one unit and it cannot consist of several locations. *C.D. Shamburger Lumber Co., Inc. v. Delavan,* 106 S.W.2d 351, 357 (Tex.Civ. App.—Amarillo 1937, writ ref'd); *Gates v. Pitts,* 2 S.W.2d 307 (Tex.Civ.App.—Amarillo 1927, no writ). In *Shamburger,* the court found the residential homestead differed from a business homestead because "[i]n designating the exemption for a business, the language is entirely different. It is a *place* to exercise the calling or business of the head of the family, and means *one place." Id.* Thus a person having several places of business is entitled to claim only one as his business homestead. *Spence v. State National Bank,* 294 S.W. 618 (Tex.Civ.App.—El Paso 1927), *aff'd,* 5 S.W.2d 754 (Tex.Comm'n App.1928).

■ A person engaged in business at two or more places may claim exemption from execution on any one of the places of business he uses, but he is not entitled to claim both. *Wingfield v. Hackney,* 69 S.W. 446 (Tex.Civ.App.—1902, writ ref'd) (a livery stable and grocery were operated on separate lots, but only one could be the business homestead); *Gibbs v. Hartenstein,* 81 S.W. 59, (Tex.Civ.App.—1904, no writ) (the owner operated a mercantile store across the street from a gasoline filling station, but only one location could

---

**3.** See *McKnight, supra.*

be the business homestead). The claimant may elect which place will constitute the business homestead. If the claimant has encumbered one location, the court will look to this fact as evidence that the claimant elected the unencumbered portion as the business homestead. *Campbell v. First National Bank,* 88 S.W.2d 1084 (Tex. Civ.App.—Amarillo 1935, writ ref'd). In *Parrish v. Frey,* the court held that the creditor relied on the debtor's designation of the location of one of his several lines of business as the homestead in making the loan on the other location, and therefore the creditor should be allowed to foreclose. 44 S.W. 322 (Tex.Civ.App.—1898, writ ref'd).

The Debtors testified that it was necessary for their retail auto parts business to have the 34th Street location in addition to the Avenue F location. The two locations are approximately 20 blocks apart. The Avenue F property is located in downtown Lubbock while the 34th Street property is located in a different commercial area on a major arterial. The Debtors made retail sales from both locations. Wholesale sales were made at the Avenue F store. Additionally, Mr. Webb's office and the business' books and records were located at the Avenue F location.

The resolution of this matter is directed by *Ford v. Aetna Insurance Co.,* 424 S.W.2d 612 (Tex.1968). Mr. Ford operated a plumbing business. His office, warehouse, and sales area were located on one lot while his workshop and storage area were on another lot located across the alley and 25 feet from the office. He stated that both lots were necessary and convenient for use in the exercise of his business. The Texas Supreme Court said:

> We hold, therefore, that the business homestead exemption may extend to two non-contiguous lots when such lots are used as a place for the operation of the business of the head of a family, and both are essential to and necessary for

such business, not merely being used in aid of the business. *Id.* at 616.

In *Ford* and in the other cases cited, Texas courts have clearly held that the business homestead must be "a place" for the operation of the business of the head of the family. If it is to occupy more than one lot, particularly if those lots are not contiguous, the location must be both "essential to" and "necessary for" the business in order to be exempt as a business homestead. The fact that they are used in connection with the business or in aid of the business or that they are convenient for the business is not enough. *In re Krug,* 102 B.R. 98 (Bankr.W.D.Tex.1989).

### Conclusion

■ To this point, the Texas cases stating that the Debtor may have only one "place" as a business homestead involve two distinct businesses operated on separate parcels of land. This court finds the same rationale should apply where the Debtor operates the same type of business at two distinct locations. The *Ford* case indicates that a debtor may have a business homestead on non-contiguous lots provided the business is operated as one integrated unit. These Debtors operated two separate stores in similar lines of business, but not as one integrated business.

Undoubtedly, the 34th Street property was an aid to the retail automotive parts business.[4] On the other hand, retail business continued from the Avenue F property where wholesale business was also conducted and where the records of the business were kept. The court cannot find that the 34th Street property was essential to and necessary for the Debtors' business. In effect, the Debtors had two places of business, but they are entitled to claim only one as a business homestead. In the homestead affidavit given to Eureka, the Debtors selected the Avenue F property as their business homestead. Therefore, the Debtors' complaint to invalidate Reserve's lien

---

**4.** The 34th Street property burned on June 16, 1988. Due to disputes with their insurance carrier the Debtors have not used it since the fire.

will be denied.[5]

ORDER ACCORDINGLY.

5. *Note, Property—Business Homesteads—Contig-* *uousness of Lots.* 21 Baylor L.Rev. 116 (1969).