### W. H. McDONALD v. ALEX. CAMPBELL.

(Case No. 3481.)

1. HOMESTEAD.— One owning and occupying as such an urban homestead, carried on his business, which was that of a druggist, in a house on lots disconnected from his dwelling-house. Another house owned by him, and situated in the same town, but not adjacent to or connected with either the property used as a dwelling or that occupied as a drug store, was used by him as a warehouse for the storing of drugs. *Held* —

(1) The lot on which the warehouse was situated was not "used to exercise the calling or business of the head of the family" so as to exempt it from forced sale under the homestead clause of the constitution of 1876.

(2) The fact that the warehouse was used in a way which was incidentally useful or profitable in carrying on the business of a druggist, was not sufficient to shield it from forced sale as the place used by the head of the family to carry on his business, when that business was actually carried on at a place disconnected therefrom.

(3) The warehouse was only auxiliary to the business store lot which the constitution exempts, and was not a part thereof.

APPEAL from Hill. Tried below before the Hon. D. M. Prendergast.

The opinion states the case.

*Jo. Abbott,* for appellant.

WALKER, P. J. COM. APP.— This is a suit brought by McDonald against the appellee, Alexander Campbell, to recover a house and lot in the town of Hillsboro, purchased by him under a sheriff's sale made to satisfy an execution against Campbell which had been levied on the property in question. The defendant claimed it as a part of his homestead, and claimed also that it was the separate property of his wife, and not subject to be sold to satisfy the execution in question, the same being issued upon a judgment against himself alone, and not against his wife. Notice of his claim of homestead exemption, and of the claim of ownership by his wife, was given at the sale. Verdict for defendant, and judgment accordingly.

The assignment of errors is general and vague; yet it sufficiently raises the only questions which, probably, the appellant desired to have considered on his appeal. There are four grounds of error assigned; the first three of them relate to the law of the case as it was given, and as it was refused to be given; the fourth applies mainly to the question whether the verdict of the jury is supported by the evidence.

We do not find in the charge of the court, nor in the refusal to give the instructions asked, any substantial error for which the judgment ought to be reversed. The district judge presented to the jury a correct exposition of the law of homestead under the constitution of 1876, and also of the law of separate property of the wife, so far as a charge upon either was required under the evidence in the case.

The instructions which were refused to be given contravened propositions of law contained in the charge of the court, on the one hand, or else, on the other, they contained but repetitions of the law as given by the court, without the addition of further unobjectionable legal propositions. We shall not discuss, therefore, any one of the grounds assigned as error relating to the instructions refused, nor to the law as given in the charge, except as it may be incidentally necessary to do so in considering the fourth and last ground of error.

In respect to the question of homestead, it was confined under the charge of the court, in effect, to the issue of fact as to whether or not the house and lot, under the facts of the case, came within the constitutional requirement which exacts that the lot or lots which are entitled to be exempted "shall be used as a place to exercise the calling or business" of the defendant.

Section 51 of article XVI of the constitution of 1876 provides that "the homestead in a city, town or village shall consist of lot or lots, not to exceed in value $5,000 at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of the family."

The proof showed that Campbell owned two acres of ground, upon which his dwelling and out-houses were situated; that he owned about fourteen acres of cultivated land within the corporate limits of Hillsboro, but not connected with the homestead lot; that he owned on the public square, and not connected with the dwelling lots, one dry goods storehouse, which he rented out at $25 per month; that adjoining this storehouse was his drug store, where he carried on the business of a druggist; that adjoining the drug store was another house, which he rented out as a saddle shop. By the side of this saddle shop was a house and lot owned and occupied by another person, and which was situated between the buildings before mentioned and the house and lot in controversy. In other words, the house and lot in controversy were not contiguous to any other property referred to and owned by appellee.

The defendant testified "that at and before the levy and sale he used the house in controversy as a wareroom; that he had therein some empty boxes, about a dozen cans of oils and paints, and a box of patent medicines which had not been opened and which he had to sell on commissions. That the house was not kept open at the time of the levy and sale, nor has it been kept open since; that he went into the house, however, whenever anything therein was wanted."

These facts do not establish the proposition that the house and lot in controversy were, in the sense and spirit of the constitutional provision above quoted, used by the defendant as his place of business; "as a place to exercise the calling or business of the head of a family."

The defendant did not carry on or conduct the business of his profession or vocation,— that of a druggist, as he testified it was,— at or in the house in controversy; but he did so at another and different house and lot, disconnected from that one which is in question. But the inquiry is suggested, naturally, under the evidence, does not the use to which the house was put in connection with the drug store business attach to it the same characteristics as the latter, and which will therefore shield it under the same exemption? We think not. The exemption applies only to such a lot or

lots as "shall be used as a place to exercise the calling or business of the head of a family."

We are of the opinion that the facts do not show that the use made of the house as a mere wareroom in which to store away articles of merchandise connected with the business in which the defendant was engaged as a druggist, was, in a legal and proper sense, the use of that house and lot in the exercise of the defendant's calling or business. Whilst the law means to allow the head of a family, exempt from execution, one or more lots where he may exercise his vocation and conduct his business, its scope is not intended to extend so far as to protect from execution a lot or lots in excess of the lot or lots on which the vocation or the business of the head of the family is followed, even though such extra lots might be actually used in a way which was incidentally useful or profitable to the business which was being followed. Such supernumerary lots must be deemed merely auxiliary to the business office, station, store, shop or other like place of business; they are superfluous to the necessities of a trade homestead, which, according to the spirit of the constitution, demands no more than a sufficiency of lots whereupon to exercise the calling or business of the head of the family. Under the evidence in this case, we conceive that the drug store and lot was the defendant's place of business, and that the house in controversy was merely a place where the defendant stored certain goods in connection with his business as a druggist. We cannot believe that a proper construction of the constitution will so far expand its liberal provisions as to make them include lots indefinite in number, at the pleasure of the beneficiary,— limited only by their value not to exceed $5,000, when designated, without regard to their improvements,— and exacting no other requirement for exemption than their appropriation to collateral service and use in the business which the owner may be conducting on some other lot elsewhere in the town or city.

The object of the homestead exemption is not to afford protection to the capital which is invested in the business, nor to encourage under exemption privileges its extension and increase, notwithstanding such results as these may ensue. The bountiful, comprehensive and most liberal provisions of the homestead law of the constitution of 1876 are in advance of similar benefactions hitherto extended under our own former constitutions and laws, and are, doubtless, far in advance, in the characteristics named, of the laws of any people on the globe. The homestead system is coeval with our existence as a state; it has been nurtured, matured and developed under

the fostering care of our legislators,— framers of organic and of statutory law,— and of our judicial tribunals; and it is in the light of the various progressive steps which have been taken, and of the steady enlargement of privileges and homestead guarantees, which have gradually increased both in extent of domain and in the limitation prescribed to the value of lots, that we are enabled, by a retrospective glance, to perceive some of the additional benefits intended to be conferred by the constitution of 1876, not hitherto enjoyed. Now, for the first time in our history, the head of a family may possess a dual homestead, disjoined and isolated as respects locality of lots and houses within a town or city, and each of them dedicated to distinct uses. The one, domestic,— the hearth-stone home; the other, the industrial home, or place of work or of business for the head of the family. The one, his " vine and fig tree;" the refuge of the family against the misery and desolation which the homeless know; the other, a sea-wall uplifted against the tide and waves of poverty and disaster, securing to him a spot of earth where he, and his family after him, may toil and earn their bread.

After allowing to the appellee the full benefit of a liberal con· struction of the constitutional provision referred to, we are of the opinion that the house and lot in controversy was not a part of his homestead; and there being error in the refusal of the court to set aside a verdict which was not supported nor warranted by the evidence, we report to the supreme court that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 16, 1882.]