Francis B. Slaughter NORMAN,
Appellant,

v.

FIRST BANK & TRUST, BRYAN,
Texas, et al., Appellees.

No. 16912.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Aug. 11, 1977.

Rehearing Denied Oct. 6, 1977.

property was her homestead and that she and Bill Norman were man and wife by reason of a common law marriage consummated in December 1955. Bill Norman defaulted on the loan which was secured by a deed of trust and the bank purchased the property at a Trustee sale in June 1975.

In response to the special issues submitted the jury found the elements of a common law marriage in favor of the plaintiff Francis B. Slaughter Norman. Bill and Francis Norman began living together as man and wife in 1955. In March 1963 they moved onto the property in dispute and continued to live there until April 4, 1972, when the house was destroyed by fire. The subject property was conveyed to Francis Norman by her father in 1963. In 1966 Mrs. Norman joined with her father in conveying the property to Bill Norman who assumed the payments. The evidence conclusively establishes that this property was used as a homestead by Mr. and Mrs. Norman up to the date of the fire in 1972.

Immediately after the fire Francis and Bill Norman moved into a house which they owned in Bryan, Texas. Mrs. Norman testified that she did not immediately go to the house in Bryan. She first went to her daughter's house in Iola which was near the claimed homestead property, and the weekend after the fire she went to Bryan and "spent a lot of time at the Hale house in Bryan, Texas, 2616 Melba Circle, which Bill had assumed the loan on that house." She further testified that she stayed in Shiro some, and that in August Bill rented an apartment in Houston for her, and that she stayed down there some.

Mrs. Norman testified that at the time of the fire there was what is referred to a a "rent house" on the property, but that it was filled with hay and was not suitable for habitation at the time of the fire. She testified that she intended to come back to the home place and make it her home as soon as it was habitable. She testified that she and Mr. Norman had had a little trouble before the fire and that they had some trouble soon after the house burned down. It was her testimony that Bill told her he

Benton Musslewhite; Helm, Pletcher, Hogan & Burrow; Shirley M. Helm, Houston, for appellant.

Lawrence, Thornton, Payne & Watson, Billy M. Payne, Bryan, for appellees.

COLEMAN, Chief Justice.

Francis B. Slaughter Norman filed this suit against the First Bank and Trust, Bryan, Texas, and against her alleged husband Paul Leslie "Bill" Norman, to enforce her claimed homestead rights in a certain tract of rural land. She appeals from an adverse judgment entered by the court on the verdict of a jury. Affirmed.

On February 21, 1973 Bill Norman executed in favor of the bank a deed of trust on property which included approximately 73 acres in the Mill McDowell League of Grimes County, Texas. He represented to the bank that the 73 acre tract was not a part of his homestead and that he was a single man. Plaintiff claims that at the time the deed of trust was executed this

would fix up the place to move back on the property. When Mr. Norman finally told her that he was not going to rebuild the house she arranged to have the rent house put in shape for occupancy and in the early part of 1974 she moved into the rent house. During the period following the fire they ran cattle on the property, used the rent house for storage of hay and possibly had a garden on the property. A barn and a large building previously used as a skating rink were located on this property. Nobody actually lived on the property until Mrs. Norman moved back in 1974.

An insurance policy dated April 6, 1957, bearing a loss payable clause to First Bank and Trust Company, Bryan, Texas, and issued to Paul Norman covered a metal frame building located on the property in question and is described as being "owner-dwelling". The tax-assessor collector of Brazos County testified that his records reflect that Paul Norman designated part of Lot 24 and 25, Block 2, Culpepper Manor No. 3 in Bryan, Texas as his homestead. He testified that Melba Circle is a street that "runs in Culpepper Manor". This designation of homestead appears in the tax records for the years 1972 and 1973. Homestead designations can be made during the period from January 1st to May 1st. Mr. Norman was not present at the trial and did not testify.

The trial court submitted three issues relating to the question of common law marriage, and predicated on an affirmative answer to those issues he submitted Special Issue No. 4 reading:

"Do you find from a preponderance of the evidence that on February 21, 1973, the 73 acre tract in McDowell League was the rural homestead of plaintiff?"

In connection with Special Issue No. 4 the following instruction was given:

"You are instructed in connection with the foregoing Special Issue that a 'rural homestead' is property of not more than 200 acres that is used for a purpose consistent with the maintenance of a home. The method of dedicating a rural homestead is by the occupancy of the land by the family as a place of the family's residence and by the use of the land for family purposes. You are further instructed that once property has been impressed with the homestead character, it continues to be a homestead until and unless the homestead is abandoned, or another homestead is acquired. If one of the spouses abandons the homestead this does not deprive the other spouse of the right to claim and continue use of the property as his or her homestead. Moreover, a husband cannot work a divestiture of the wife's homestead rights through transactions of any nature without her joinder. You are instructed further that once property becomes homestead, the homestead claimant may cease to occupy the property without destroying the homestead character of the property as long as the homestead claimant intends to return to occupy the homestead property at some time.

You are further instructed that the husband has the right to designate a homestead and he may claim a homestead on property designated by him in the occupancy of the property."

The plaintiff objected to the last sentence of the instruction quoted above for the reason that the statement constituted a comment upon the weight of the evidence and it was "an unnecessary instruction since the husband's alleged homestead is not an issue here, only the homestead of the alleged wife, Mrs. Lucille Norman, and consequently, the instruction has no relevance to any issue to be decided by the jury, and as a comment upon the evidence could be and is highly prejudicial to the plaintiff's case."

In her motion for new trial the plaintiff stated that the trial court erred in entering judgment upon the verdict because Special Issue No. 4 is immaterial since it incorrectly included the last sentence of the instruction quoted above as part of the definition of homestead. The plaintiff stated:

"The inclusion of this definition undoubtedly confused the jury and was an incorrect statement of law in the context of the facts of this case and therefore

caused any finding as to such issue to be immaterial, thus requiring a new trial." The plaintiff also included in her motion for a new trial her contention that the trial court erred in entering judgment upon the verdict because the evidence in the case established as a matter of law that the property in question was the homestead of the plaintiff in February 1973, when the deed of trust in question was executed. Appellant properly preserved in her motion for a new trial the contention that there was no evidence to support the jury's answer to Special Issue No. 4.

The plaintiff also contended as a matter of law it was established that the property in question was the homestead of the plaintiff prior to 1972, and that there was no proof or finding establishing the abandonment of the homestead after that date.

In the motion for new trial the plaintiff contended that the trial court erred in entering judgment based on Special Issue No. 4 because the answer made by the jury to that issue was contrary to the great weight and overwhelming preponderance of the evidence.

■ The evidence establishes that prior to 1972 the property in question constituted the homestead of Mr. and Mrs. Norman. When homestead rights are once shown to exist in property, they are presumed to continue, and anyone asserting an abandonment has the burden of pleading and proving it by competent evidence. *Sullivan v. Barnett*, 471 S.W.2d 39 (Tex.1971). The bank plead abandonment and presented evidence tending to show the acquisition of a new homestead after the parties were forced to move from the property in question by reason of the destruction of their residence. The bank did not request separate issues dealing with the question of abandonment or with the question of the acquisition of a new homestead.

Special Issue No. 4 submitted the controlling issue of whether the property in question was the homestead of the parties on the date Mr. Norman executed the deed of trust securing his note at the bank. The subsidiary issues of abandonment and of the acquisition of a new homestead were presented to the jury by explanatory instructions. This procedure is authorized by Rule 277, Vernon's Texas Rules Annotated. There was no objection to this method of submitting the case although Mrs. Norman submits in her brief that the issue of abandonment was waived by the failure to request an issue on this point.

■ Proof that a new homestead has been acquired establishes abandonment of the old homestead as a matter of law. *Silvers v. Welch*, 127 Tex. 58, 91 S.W.2d 686 (1936); *Calvin v. Neel*, 191 S.W. 791 (Tex. Civ.App.—Fort Worth 1916, writ ref'd). In *Rancho Oil Co. v. Powell*, 142 Tex. 63, 175 S.W.2d 960 (1943), the court said:

". . . the acquiring of a new home is not always the acquiring of a new homestead, and one does not necessarily abandon a homestead by merely moving his home."

The facts of that case show that a widow having homestead rights in rural property remarried and moved from her home to the rural homestead of her new husband with no intention of returning to her former home. She continued to use her property for farming purposes. The combined acreage of her farm and her husband's farm was less than 200 acres. The court held that it was not required that she both use and occupy the property for a homestead, but only that she either use or occupy the property. The court held that Mrs. Johnson's intention to abandon the homestead rights in her separate tract of land did not constitute an abandonment when she continued to use the property for homestead purposes. The court pointed out that they were not faced with a case in which it was sought to add additional land to an existing homestead tract, but that the case was one in which the tract under consideration and the Alex Johnson tract were both actually impressed with the homestead status by occupancy and use before the marriage of Ida and Alex Johnson.

Here we are not faced with such a case since the homestead rights of Mrs. Norman

and the agriculture land can not be combined with homestead rights in a city lot subsequently acquired. *Commerce Farm Credit Co. v. Sales*, 288 S.W. 802 (Tex. Comm'n App.1926, holding approved).

■ It is settled law that although the wife may not own the fee or any part of it in lands impressed with the homestead character, she does have an estate in such lands, to wit, the homestead, vested and absolute, of which she could not be deprived except by alienation by her own consent and, by which upon the death of her spouse becomes a life estate. No mortgage or trust deed or other lien on the homestead is valid. *Woods v. Alvarado State Bank*, 118 Tex. 586, 19 S.W.2d 35 (1929).

In *Hudgins v. Thompson*, 109 Tex. 433, 211 S.W. 586 (1919), the supreme court quoted with approval this statement of the law:

"If, however, the husband, in fraud of the right of the wife and without her consent, should seek by an abandonment to withdraw the homestead from the pale of its exemption given for the benefit of the family, he could have no power to do so; but while he acts in good faith and not against the will of the wife, having alone in view the good of the family, of which by nature and by law he is the recognized head, his power to abandon a homestead ought not to be questioned; and, in the absence of evidence to the contrary, it ought to be presumed, when a removal from a homestead is made, that it was made in good faith and with the consent of the wife."

The court held that the husband could where acting in good faith abandon the homestead even though the wife would not consent to such abandonment.

■ There is evidence from which the jury could have concluded that immediately after the fire Mr. and Mrs. Norman moved into premises in the City of Bryan which were suitable for a homestead; that at that time they were married and living together; that Mr. Norman intended to make the premises a home for his family and continued to make use of it as his home. While

there was evidence to the contrary such findings are sufficient to establish the acquisition of a new homestead and to establish abandonment of the old homestead as a matter of law. *Silvers v. Welch*, 127 Tex. 58, 91 S.W.2d 686 (1936). Since there is sufficient evidence to sustain the findings that Mr. Norman has selected a homestead in the City of Bryan, and has occupied it for the family, the matter of Mrs. Norman's intent to claim or abandon a homestead for herself is no longer decisive. *Burk Royalty Company v. Riley*, 475 S.W.2d 566 (Tex. 1972). A designation of the Bryan residence as a homestead for tax purposes by Bill Norman is some evidence of his intention of making this property his homestead. Removal to a different residence and use and occupancy of it as a homestead, unaccompanied by any act evidencing an intention to return to his former home is evidence that a new homestead has been acquired and the old one abandoned. *Hinton v. Uvalde Paving Co.*, 77 S.W.2d 733 (Tex. Civ.App.—Dallas 1934, writ ref'd).

■ The above statements of the applicable law point up the contention of Mrs. Norman that the trial court erred in instructing the jury that "the husband has the right to designate the homestead and may claim a homestead on property designated by him even though his wife fails to join him in the occupancy of the property." That this is not an affirmatively erroneous statement of the law was determined in *Schulz v. L. E. Whitham & Co.*, 119 Tex. 211, 27 S.W.2d 1093 (1930), where the supreme court stated:

". . . the homestead right may attach although the wife may never move upon the property . . . the homestead estate exists when the husband resides on the property, even though the wife absents herself therefrom, so long as the husband recognizes and discharges his moral and legal obligation to support her. . . ."

It is true that the definite instruction given by the court omitted to inform the jury that the husband must act in good

faith in abandoning and establishing a homestead. In this respect, however, the objection made to the court's instruction did not specifically and clearly point out wherein it was claimed that the instruction was insufficient or in error. The objection to the charge only informed the court of the contention that the instruction constituted a comment on the weight of the evidence. This is not sufficient. *Yellow Cab & Baggage Co. v. Green*, 154 Tex. 330, 277 S.W.2d 92 (1955).

█ The court may not in its charge comment directly on the weight of the evidence, but the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence where it is properly a part of the explanatory instruction or definition. Rule 277, Vernon's Texas Rules Annotated. The objection made to the charge was not well founded.

█ In her motion for new trial appellant asserts that the finding of the jury in answer to Special Issue No. 4 is contrary to the great weight and preponderance of the evidence and that, therefore, the trial court erred in entering judgment on the verdict. It is well established that where the evidence raises an issue of fact it must be submitted to the jury and that a judgment must be entered on the answer made thereto. The trial court does not err in entering a judgment based on the jury's answer to an issue even though he considers that the answer is contrary to great weight and preponderance of the evidence. The burden was on the appellant to establish the affirmative of the issues submitted. There were no objections to the charge on the ground that the judge failed to instruct the jury on the burden of proof on the subsidiary issues of abandonment and establishment of a new homestead. The appellant had the burden of proof on Special Issue No. 4. To be entitled to a reversal of a judgment on appeal it is her burden to show that she is entitled to recover as a matter of law on the facts found by the jury and the undisputed facts. She has failed to sustain this burden.

Appellant seeks reversal on the ground of jury misconduct in that certain statements were made by the jurors either misconstruing the law or injecting into deliberations matters not admitted into evidence. Two jurors testified that the following statements were made:

1. That since Bill and Frances Norman were married she would share in his property. That there would be a trial or divorce or something like this and at that time there would be a settlement of community property in which Frances Norman would share.

2. That since Frances Norman had joined her father in a deed to Bill Norman, he could do anything he wanted with the property without regard to her homestead claim. That there was probably an agreement between the couple that each would take care of their own business.

3. That this piece of property could not legally be a homestead.

4. That the man had the right to designate the homestead and anything he did would be binding on appellant.

█ A trial court grants a new trial on the grounds of jury misconduct if (1) material misconduct actually occurred, and (2) if it reasonably appears that injury probably resulted to the complaining party. Rule 327, T.R.C.P.; *Fountain v. Ferguson*, 441 S.W.2d 506 (Tex.1969). Where no findings of fact are requested or filed as in the instant case, the appellate court will presume the trial court found every issuable fact in favor of appellee and against appellant. *Brawley v. Bowen*, 387 S.W.2d 383 (Tex.1965).

█ Statement number 4 listed above, the fact that Mr. Norman had the right to choose the homestead, was merely a restatement of an instruction given to the jury by the court and did not constitute misconduct.

█ Two jurors were called to testify. Mr. Carraway testified that the statements listed as numbers 1 and 2 were not made until after Special Issue No. 4 was

answered. The other juror testified that they were made prior to answering Special Issue No. 4. Mr. Carraway's testimony was weakened by further testimony indicating that he was unsure as to exactly when the statements were made. Improper conduct which occurs after the jury has answered issues which might have been affected thereby is not reasonably calculated to affect the verdict and is not reversible error. *Triangle Cab Co. v. Taylor*, 144 Tex. 568, 192 S.W.2d 143, 146 (1946). In support of the trial court's action in overruling the motion for a new trial, we presume a finding that the conduct occurred after the issue was answered. This is a fact determination that is binding on this court if there is any evidence to support the finding. *Price v. Biscoe*, 141 Tex. 159, 170 S.W.2d 729 (1943); *Triangle Cab Co. v. Taylor*, 144 Tex. 568, 192 S.W.2d 143 (1946).

The charge of misconduct in that a statement was made that this piece of property could not legally be a homestead is based upon the testimony of Mr. Carraway. The court's instruction in effect that the husband had the right to designate the homestead was called to Mr. Carraway's attention and he testified that this instruction was read to the jury and was discussed by members of the jury prior to the answering of Special Issue No. 4. He testified that one or more members of the jury stated that the effect of the instruction was that whatever property the husband designated was binding upon his wife. Mr. Carraway further testified:

"During the trial, you know, the records were brought up. And—where, as you know, we are not lawyers and that kind of thing—but, that was the feeling of the jury because of what was brought out in the records, where there was a homestead filed."

He stated that this statement had an effect upon the jury "because I think that we felt it had been brought out in the trial, it was the law on it." The next question which Mr. Carraway was asked reads:

"Okay, and it was binding upon her regardless of what the other facts might

be, since he designated the property in Bryan, that binded her as to any homestead she might claim, is that right?"

Mr. Carraway answered:

"Yes, sir, because I—I still think that this reverts back to the deed situation, that actually the property wasn't legally—to be a legal piece of property that could be homestead."

He then testified that that was so stated in the jury room.

It is unclear from this exchange whether the juror who made the statement said that the property could not legally be homestead because Bill Norman had designated a new homestead or whether it was because the property had been conveyed to and held by Bill Norman in his name. The witness testified that he thought it reverted back to the deed situation; he did not attempt to state the actual words spoken in the jury room. He seems to be saying that he thought that the farm property could not legally be designated as a homestead and that something to that effect was stated in the jury room. When this statement is considered with his testimony immediately preceding relating to the meaning of the court's charge and the manner in which it should be applied to the case, no misconduct is shown.

The law is clear that a juror is not guilty of misconduct, and the verdict need not be set aside, when one or more jurors simply misconstrue a portion of the court's charge and state the erroneous interpretation to other members of the jury. *Compton v. Henrie*, 364 S.W.2d 179 (Tex.1963).

In order to justify the reversal of the judgment entered by the trial court on the basis of this statement, it is necessary that we find the statement was an incorrect statement of the law and that as a probable result the jury answered Special Issue No. 4 in a manner different from the answer which would have been returned had the statement not been made. There is no testimony that any juror changed his vote as a result of the statement.

When misconduct is established, the question of injury is one of law for the reviewing court. Under the above quoted rule both the trial and reviewing courts have the right to review the matter in the light of the entire record. By the entire record is meant the evidence heard on the motion presenting misconduct, the evidence on the main trial, and any and all other parts of the record which may throw light on the question of injury. The juror may not preserve or destroy his verdict by testifying to the mental processes by which he reached the same. *Barrington v. Duncan*, 140 Tex. 510, 169 S.W.2d 462 (Tex.1943); *Trousdale v. Texas & N.O.R. Co.*, 154 Tex. 231, 276 S.W.2d 242 (1955).

If we assume that this was a statement of law which was not included in the court's charge, it was merely the statement of one who did not hold himself out as a lawyer or as having a knowledge of the law greater than that of the other jurors. There is no showing that the statement was extensively discussed in the jury room or any circumstances which would establish that any juror's vote was influenced by the statement.

We are unable to hold after reviewing the evidence both on the hearing of the motion, the trial of the case and the record as a whole, that injury probably resulted to the appellant from the acts of jury misconduct presented.

The plaintiff also asserts that the trial court erred in failing to include in the judgment a decree that Bill and Francis Norman are married as required by the verdict of the jury.

The purpose of the suit as shown by the pleadings was to determine property rights. The plaintiff did not seek a declaratory judgment or other adjudication of her marital relationship with Bill Norman in the allegations or prayer in her petition. This point was not preserved in plaintiff's motion for new trial. No error is presented by this point.

The judgment is affirmed.