In re Joseph L. MOORE, d/b/a Radford Hills Laundry, Debtor.

Joseph L. MOORE, d/b/a Radford Hills Laundry, Plaintiff,

v.

BANK OF COMMERCE, Defendant.

Bankruptcy No. 187–10247–11.
Adv. No. 188–1016.

United States Bankruptcy Court, N.D. Texas, Abilene Division.

Feb. 6, 1990.

---

Billy W. Boone, Abilene, Tex., for debtor.

Dean Shuman, Conrad & Shuman, Dallas, Tex., for the Bank.

## MEMORANDUM OF OPINION ON BUSINESS HOMESTEAD [1]

JOHN C. AKARD, Bankruptcy Judge.

This case first came before the court in November, 1988. The issue at that time was whether the Debtor's business homestead claim was subordinate to the bank's note and deed of trust that secured the property. The court held that the Debtor's property did not take on homestead characteristics until the Debtor occupied the property. Because the bank's lien was perfected before the Debtor abandoned a prior homestead and before the Debtor moved into his new business homestead, the court held the bank's lien superior to the Debtor's homestead claim. *Moore v. Bank of Commerce (In re Moore),* 93 B.R. 480 (Bankr.N.D.Tex.1988). The decision was appealed to the district court which remanded the case in light of *Houston Lumber Supply Co. v. Wockenfuss,* 386 S.W.2d 330 (Tex.Civ.App.—Houston [14th Dist.] 1965, writ ref'd n.r.e.) and the question of intent—the subjective intent of the Debtor to make the unimproved land his homestead.

## FACTS

In June 1978, Joseph L. Moore d/b/a Radford Hills Laundry (Debtor) and wife, Alma Faye Moore, acquired the Radford Hills Laundromat (original laundromat). The laundromat was operated continuously in leased premises until January 1985. In the summer of 1984, Mr. Moore located a parcel of land suitable for a new laundromat. He had decided to move the laundromat from the current leased premises due to a scheduled rent increase which would take effect in 1985. Mr. Moore purchased the property in October, 1984 and began to build the new laundromat. In January 1985, the building was completed and Mr. Moore began to operate from the new location. The original laundromat remained in full operation until the new laundromat opened. The laundromats operated simultaneously for at least one day during the transition.

Mr. Moore filed bankruptcy on August 6, 1987. When this case first came before the court, we heard no testimony regarding Mr. Moore's intention to make the new laundromat his business homestead. In fact, Mr. Moore testified that he was unaware that a man could even claim a "business" homestead.

The district court requested this court, on remand, to delve further into the question of intent. This court is faced with a difficult task. Not surprisingly, Mr. Moore now contends that he always "intended" the new laundromat to be his homestead. The officer at the Bank of Commerce who handled the loan granted Mr. Moore to build the new laundry is deceased. Thus, there is no concrete evidence whether or not the bank had knowledge that the new premises would constitute Moore's business homestead. In essence, this court is called upon to determine the subjective in-

---

1. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.

tent of the parties at the time Moore borrowed from the bank.

## ANALYSIS

The district court suggested that *Houston Lumber, supra,* would assist this court's analysis. Although it was not a bankruptcy case, it nevertheless focused on the landowner's intent to claim a parcel as his homestead. In *Houston Lumber,* Mr. Wockenfuss (the landowner) resided in rented premises at the time the contract on his new premises was breached. Although Wockenfuss did not occupy the premises at the time of the breach, the court held that nevertheless he intended the new premises to constitute his homestead. *Id.* at 333–34. Prior to the contract, Wockenfuss had removed a tree and staked out his new home. These acts, held the court, were adequate to evidence an intent to impress the property with homestead characteristics. *Id.*

"[I]n order to impress upon property a homestead character, in the absence of actual occupancy thereof, there must be an intention ... to reside upon it ... coupled with some overt act of preparation evidencing that intention." *Gilmore v. Dennison,* 131 Tex. 398, 115 S.W.2d 902 (Tex.Comm'n App.1938, opinion adopted). Removing stumps and staking the lot were sufficient "overt acts" to evidence an intention to reside upon the premises in *Houston Lumber.* But, in the case at bar, what overt acts evidence Mr. Moore's intention?

Mr. Moore contracted to purchase the new parcel in August 1984. He placed $5,000.00 in escrow as consideration for that contract. He discussed his plans with the bank, designed a floor plan, contracted for building materials, and obtained site approvals from the City of Abilene. In light of *Houston Lumber* these acts certainly evidence more intent than removing a stump or staking a lot. This case, however, differs from *Houston Lumber.*

Mr. and Mrs. Wockenfuss, in *Houston Lumber,* rented an apartment for a short period while awaiting the opportunity to build their "dream home." 386 S.W.2d at 333. The temporary nature of the rented premises is clear from the statement of facts. Mr. Moore's situation is considerably different. He had operated his laundromat in the same location for seven years and had made considerable improvements in the leased premises. Until Mr. Moore entered into the contract for sale on the new property, clearly the original laundromat constituted his business homestead. When did the original laundromat lose its homestead characteristics and the new laundromat become Mr. Moore's business homestead? That is the ultimate issue before this court.

First, it must be noted that the right to a homestead in a particular tract of land, once it is vested by use, is presumed to continue until there is proof of abandonment. *See Gill v. Quinn,* 613 S.W.2d 324 (Tex.Civ.App.—Eastland 1981, no writ). Thus, in Mr. Moore's case, the original laundromat remained his business homestead until he abandoned it.

What constitutes abandonment? This question is answered in *Norman v. First Bank & Trust, Bryan,* 557 S.W.2d 797 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). Regarding homestead rights the court stated that homestead rights, once shown to exist, are "presumed to continue, and anyone asserting an abandonment has the burden of pleading and proving it by competent evidence." *Id.* at 801 (citing *Sullivan v. Barnett,* 471 S.W.2d 39 (Tex.1971)). The *Norman* court further stated, however, that the evidence necessary to rebut the homestead presumption is satisfied by "proof that a new homestead has been acquired...." *Id.* In *Norman* there was evidence that Mr. Norman intended to make the new premises his home with no intention to return to the former homestead. This evidence, held the court, was "sufficient to establish the acquisition of a new homestead and to establish abandonment of the old homestead *as a matter of law.*" *Id.* at 802 (emphasis added). The new testimony heard in the case at bar indicated that Mr. Moore purchased the new land with the intention to move from the original laundromat with no intention to return. This, in light of *Norman,* would constitute abandonment of the

original homestead "as a matter of law." *See id.* at 802; *Hillock Homes Inc. v. Claflin (In re Claflin)*, 761 F.2d 1088, 1092 n. 3 (5th Cir.1985).

Therefore, we have established that Mr. Moore abandoned his homestead rights in the leased premises when he acquired the new parcel. But, when did homestead characteristics attach to the new laundromat? In *Hufstedler v. Glenn*, 82 S.W.2d 733, 735 (Tex.Civ.App.—Austin 1935, no writ), the court held that where a lender had notice of a borrower's intention to make property a business homestead the property was impressed with homestead characteristics at the time the contractor's lien was created. In the case before the court today, Mr. Moore testified under oath that he discussed his plans to move his laundromat with his banker. The October 3, 1984 deed from the landowner to Mr. Moore cited a vendor's lien securing a note payable to the Bank for $260,190.81. It is stipulated that the note was composed of three elements: (1) the $85,353.17 balance of the purchase price of the property, (2) $29,826.81 owed by Mr. Moore to the Bank on a pre-existing debt, and (3) $145,010.83 subsequently advanced by the Bank to Mr. Moore for the construction of the building on the property. He then built the new laundromat and moved from the former location.

■ In summary, it is evident that Mr. Moore intended the new laundromat to be his business homestead. He abandoned the former homestead when he acquired the new parcel. The bank was on notice when the loan was executed that the new parcel would (or could) be impressed with homestead characteristics and should have required a homestead designation as a part of its loan documentation. As the new laundromat is impressed with homestead characteristics, it is now necessary to determine which part of the bank's claim is purchase money and which part is invalid as against homestead property.

The deed of October 3, 1984 was made to Joseph L. Moore. He signed the note and deed of trust on the same date. Although Mr. Moore had been married for a number of years and remained married throughout these proceedings, his wife did not sign any of the notes, deeds of trust or extension agreements.

The Texas statute permits liens on the homestead for only three purposes: (1) All or a part of the purchase money; (2) taxes on the homestead; and (3) work and material used in constructing improvements on the homestead if the work and material were contracted for in writing and, in the case of a family homestead, if both spouses gave consent in the manner required by law for the conveyance of the homestead. Tex.Prop.Code Ann. § 41.002 (Vernon 1984). Thus, the portions of the October 3, 1984 note representing a prior obligation to the Bank and funds for the construction of the building cannot be considered a valid lien on the business homestead. The $85,-353.17, representing a portion of the purchase money of the property, does constitute a valid lien on the homestead.

Mr. Moore signed a deed of trust on October 3, 1984 and a second deed of trust on March 1, 1985 which renewed and extended the earlier deed of trust. Both deeds of trust contained the following provisions:

> In the event any portion of the indebtedness hereinabove described cannot be lawfully secured by this Deed of Trust lien on said real property, it is agreed that the first payments made on said indebtedness shall be applied to the discharge of that portion of said indebtedness.

It is customary practice, and is understood in notes of this nature, that all payments are applied first to' accrued interest and then to the principal. Mr. Moore filed for relief under Chapter 11 of the Bankruptcy Code on August 6, 1987. This adversary proceeding was filed on February 29, 1988. All payments of principal made prior to August 6, 1987 shall be applied to the unsecured portion of the indebtedness. All payments made on and after August 6, 1987 shall be applied to the $85,353.17 secured portion of the indebtedness. Interest shall accrue from the date of the last payment prior to August 6, 1987 on said secured

amount at the unaccelerated contract rate. All payments shall be applied first to accrued interest and then to a reduction of the principal. After such initial payment, interest shall be calculated on the unpaid balance. The court is aware that the Debtor has made adequate protection payments to the bank during the course of this proceeding and all such payments shall be applied as herein specified.

ORDER ACCORDINGLY.