In re Edward L. HUGHES, Debtor.

Edward L. HUGHES, Plaintiff,

v.

TEAM BANK, Defendant.

Bankruptcy No. 391–35030 RCM–7.
Adv. No. 392–3003.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 22, 1993.

## MEMORANDUM OPINION

ROBERT C. McGUIRE, Chief Judge. .

The following are the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052, with respect to the trial of the above-referenced adversary proceeding. This case addresses the circumstances under which a business homestead exemption may extend to two or more noncontiguous lots. At the date of the filing of his bankruptcy petition, Edward L. Hughes ("Plaintiff" and/or "Debtor") owned and occupied certain real property located at 3027 Routh Street, Dallas, Texas (the "Routh Street Property"). Pursuant to § 41.002(a) of the Texas Property Code, Plaintiff claimed the Routh Street Property in his bankruptcy schedules as both his residential and business homestead. By a declaratory judgment action, Plaintiff seeks to invalidate, in large part, the liens on the Routh Street Property, which attached subsequent to the time the property was purportedly impressed with its business homestead character.[1]

Defendant asserts the Routh Street Property never qualified as a business homestead on the grounds that the business Plaintiff operated at that location was merely incidental to several other separate ventures he conducted throughout the city.

Next, Defendant argues that Plaintiff is estopped to claim the Routh Street Property as his business homestead based on Plaintiff's written representations as to that property's character. In this regard, Defendant points to two things: (1) statements made in executed deeds of trust; and (2) two homestead affidavits dated December 16, 1985 and November 14, 1988. Additionally, Defendant asserts that Plaintiff is barred from challenging the validity of the Routh Street Property deeds of trust by virtue of the doctrine of *D'Oench Duhme.* Defendant asserts Plaintiff lent himself to a scheme or arrangement to mislead bank examiners by granting Defendant consensual liens against the Routh Street Property, and disclaiming in writing any homestead interest therein.

■ As a final point, Defendant contends that retroactive application of art. 41.002 of the Texas Property Code impermissibly impairs existing contractual rights and/or constitutes the taking of property without due process of law, all in violation of the United States Constitution.[2] This issue has been addressed in two scholarly opinions which upheld the retroactive application of § 41.-002(a) of the Texas Property Code (amended 1984) to homestead designations, against due process challenges. *In re Starns,* 52 B.R. 405 (S.D.Tex.1985); *In re Barnhart,* 47 B.R. 277 (Bankr.N.D.Tex.1985); *see also, In re John Taylor Co.,* 935 F.2d 75, 78 (5th Cir. 1991) (citing *Starns* approvingly) (to the extent consistent with the United States Constitution, state law may retroactively increase the amount of property defined as homestead and change the pre-bankruptcy rights of

---

1. The indebtedness owed Team Bank ("Defendant") largely relates to working capital loans provided to Plaintiff for his various business ventures. Defendant is secured by first and second deeds of trust on the Routh Street Property. Admittedly, only $43,000 of the total indebtedness, $284,254.28, was advanced as part of the purchase money for the homestead, and for the payment of delinquent real estate taxes. Plaintiff concedes that that portion of the secured indebtedness represents valid liens against his proposed business homestead.

2. [Editor's Note: Footnote deleted pursuant to August 30, 1993 opinion reported at 159 B.R. 197.]

creditors and homestead claimants). Defendant's constitutional arguments do not warrant any further discussion.

After considering the evidence, relief is granted as prayed for by Plaintiff except payments received by Defendant will be applied first to the unsecured portion of the remaining indebtedness owed to it.

### Factual Background

Plaintiff, the Debtor, is an individual who resides and does business in Dallas, Texas.

Defendant is a state banking corporation, organized and existing under the laws of the State of Texas, and is the successor, by merger, to Team Bank, N.A., formerly known as Texas American Bridge Bank, N.A., assignee of the Federal Deposit Insurance Corporation ("FDIC") as Receiver for Texas American Bank–Prestonwood.

On April 28, 1975, Plaintiff purchased certain real property located at 4420 Edmondson Street, Dallas, Texas ("Edmondson Property"), for the price of $70,000. Plaintiff maintained this as his residential homestead from 1975 until his divorce in October 1986.

The Routh Street Property was purchased on December 28, 1977, for the price of $55,000. Dallas Federal Savings & Loan Association ("Dallas Federal") assisted in financing the purchase of the property. Plaintiff executed a note to Dallas Federal for the balance of the purchase price, $30,000, and received a first deed of trust lien on the property to secure the note's repayment. (Defendant's Exhibits ("DXs") 25 and 26). On November 16, 1988, Bright Bank Savings Association, successor by merger to Dallas Federal, transferred to Defendant the note (the "Purchase Money Note") and deed of trust. (DX 27). Plaintiff does not dispute the validity of this lien.

Subsequent to Plaintiff's purchase of the Routh Street Property, he renovated and converted it into a multi-tenant office building. These renovations were completed by

mid–1978, at which time · Plaintiff leased a portion of the site to Environmental Services, Inc. ("ESI"), a sole proprietorship owned by Plaintiff.[3] The balance of the office space available was leased by Plaintiff to other unrelated business entities.

In October 1986, as a result of his divorce, Plaintiff moved out of the Edmondson Property, and set up a personal residence at the Routh Street Property. Plaintiff still maintains his personal residence at that location.

### The ESI Note

On April 23, 1982, ESI made, executed, and delivered to Defendant a promissory note in the original principal amount of $100,000 (the "ESI Note"). (DX 28). The ESI Note was secured by the personal guarantee of Plaintiff and a second deed of trust on the Routh Street Property dated April 23, 1982. (DXs 29–30). The loan proceeds were used to capitalize a new business venture of Plaintiff known as Jonathan's Habitations. The ESI Note was renewed and extended in 1984, 1986, and 1987, and finally incorporated into a 1988 consolidation of the Team Bank loans. (DXs 31–33, and 54).

### Note A

On September 9, 1982, Plaintiff executed a promissory note payable to Defendant in the principal amount of $100,000 ("Note A"), in order to acquire additional operating capital for his business ventures. (DX 34). Note A was secured by a second deed of trust lien on the Routh Street Property, recorded in the Dallas County Deed Records. (DX 35). The note was subsequently renewed in 1983, 1984, 1985, 1986, and 1987, prior to the 1988 loan consolidation. (DXs 36–40, and 54).

No portion of the proceeds of the ESI Note or Note A were used to improve the Routh Street Property or to pay real estate taxes thereon. Defendant did not request Plaintiff to execute a homestead affidavit in connection with the funding or renewal of either the ESI Note or Note A, prior to 1988.

---

**3.** In 1971, Plaintiff established ESI for the sale of window treatments and design elements on a wholesale basis. He originally incorporated the business, but in 1972 suspended its corporate

form of business, and thereafter intermittently operated ESI as a sole proprietorship and as a corporation.

## Note B

On January 25, 1985, Plaintiff executed a promissory note payable to Defendant in the principal amount of $12,000 ("Note B"). (DX 41). Note B was also secured by a second deed of trust lien on the Routh Street Property. (DX 42). The proceeds were used for the purpose of paying taxes and expenses on another business venture of Plaintiff known as Fabricators. Renewals of this note were executed in 1985, 1986, and 1987. (DXs 43–46).

No portion of the loan proceeds of Note B was used to improve the Routh Street Property or pay real estate taxes.

Defendant first requested and received a homestead affidavit as to the Routh Street Property in connection with the execution of Note B. (DX 49). That affidavit, dated December 16, 1985, required Plaintiff to attest that he was not currently using the Routh Street Property as his homestead.

## Note C

On December 16, 1985, Plaintiff executed a promissory note payable to Defendant in the principal amount of $12,409.64 ("Note C"), secured by a second deed of trust lien on the Routh Street Property. (DXs 47–48). The loan proceeds represented by Note C were used for the purpose of providing funds for ESI's business expenses. Note C was renewed on three occasions between 1986–1987. (DXs 50–52). Plaintiff was not asked to execute any affidavit of homestead and/or disclaimer of homestead in conjunction with the funding of Note C or any of its renewals, prior to 1988.

## Consolidated Note and Note D

On November 14, 1988, all of the above-described loans from Defendant (less accrued interest on the underlying indebtedness) were consolidated into a new note payable to Defendant, in the principal amount of $161,018.73 (the "Consolidated Note"). (DX 54). In addition to consolidating the above-described indebtedness, the note also included in its principal amount $10,282.60, which was advanced for the payment of delinquent 1986 and 1987 real property and ad valorem taxes on the Routh Street Property. Plaintiff does not dispute the validity of Defendant's lien as it attaches, relating to this $10,282.60 amount.

On that same date, in conjunction with the Consolidated Note, Plaintiff executed a promissory note to Defendant in the principal amount of $19,561.04 ("Note D"), which represented accrued interest on the underlying notes. (DX 55). Both Note D and the Consolidated Note, were also secured by a lien on the Routh Street Property. (DX 56).

On November 14, 1988, in connection with the Consolidated Note and Note D, Plaintiff executed a second homestead affidavit. That affidavit stated that he did not "use in any manner, nor claim as a business or residence homestead, nor have any future intention of ever residing upon, using or claiming as either a business or residence homestead prior to his divorce" the Routh Street Property. (DX 58).

To date, Plaintiff has made payments totalling approximately $15,000 toward the Consolidated Note. Defendant did not prorate these payments to the underlying notes.

At the beginning of the summer of 1991, Defendant posted the Routh Street Property for foreclosure. On July 1, 1991, Plaintiff filed his Chapter 7 bankruptcy petition. Plaintiff has continued to occupy the Routh Street Property for both the conduct of his business and as his residence.

## Discussion

■ In order for property to qualify as a business homestead, two preliminary statutory requirements must be met. First, the property must be located in the same urban area as the claimant's residential homestead. Second, the property must be used as a place to exercise a calling or business. Texas Property Code § 41.002 (Vernon Supp.1992).

■ Expanding these statutory requirements, Texas courts have delineated other factors associated with business homesteads. The cases have made clear that a business homestead exists only in connection with the principal business of the homestead claimant, though the homestead itself can consist of

two or more non-contiguous lots. In *Ford v. Aetna Ins. Co.*, 424 S.W.2d 612, 616 (Tex. 1968), the Texas Supreme Court stated the rule as follows:

> We hold, therefore, that the business homestead exemption may extend to two non-contiguous lots when such lots are used as a place for the operation of the business of the head of a family, and both are essential to and necessary for such business, not merely being used in aid of the business.

Lots which are used "in aid of" the business, but which are not "essential to and necessary for" the business, are not protected. *In the Matter of Webb*, 954 F.2d 1102 (5th Cir.1992); *In re Krug*, 102 B.R. 98 (Bankr.W.D.Tex.1989).[4]

■ Finally, as in all homestead cases, the courts require that the homestead claimant's occupation and use of the property be accompanied by both overt acts of homestead usage, and the intention on the part of the owner to claim the land as a homestead. *In re Kennard*, 970 F.2d 1455 (5th Cir.1992); *In re Nelson*, 134 B.R. 838 (Bankr.N.D.Tex. 1991); *Sims v. Beeson*, 545 S.W.2d 262 (Tex. Civ.App.—Tyler 1976, writ ref'd n.r.e.).[5]

■ After evaluating the factual calculus developed by Texas case law and statutes, this Court concludes that the Routh Street Property qualifies as Plaintiff's business homestead. The record relating to the business activities of Plaintiff between 1982–1988 (the dates credit was extended to Plaintiff by Defendant), demonstrates that the business of ESI, located at 3027 Routh Street, was Plaintiff's principal business.

■ In 1972, ESI began business operations as a sales representative of manufacturers of interior decorations and furnishings. However, over time, ESI specialized as a sales representative for companies which

4. Texas courts, in interpreting the requirements of a "business" or "calling" have followed a case-by-case approach. It is well-settled that, in order for a lot to qualify as business homestead, it must be "adapted and reasonably necessary" to the claimant's business or calling, and "must be used as a place to exercise the calling or business." *McDonald v. Campbell*, 57 Tex. 614 (1882) (storage area for medicines, located adjacent to drugstore does not qualify as place for exercising business or calling); *Rock Island Plow Co. v. Alten*, 102 Tex. 366, 116 S.W. 1144 (1909) (retail operation of hardware dealer held exempt as place where judgment debtor transacted his principal business, while storage area and bathroom for customers located on other lot, non-exempt). These older Texas cases suggest that the location of a business or calling required special physical adaption of the property to a trade. It is unlikely the restrictive interpretation of the term "business" espoused "by the Justices of the Texas Supreme Court a century ago contemplated the dramatic shift of service-oriented paper shuffling that marks so much of modern day callings." *Krug, supra* at 98, n. 2. In fact, the Texas Supreme Court's most recent statement on this subject appears to have dispensed with any requirement that the property be physically adapted to the principal business of the debtor. *Ford v. Aetna Ins. Co., supra*. In *Ford*, the Supreme Court shifted its emphasis in interpreting the exemption test for business homestead. Now, the chief determinant of whether a lot "is essential to and necessary for" a business depends on "whether the business could keep the character it had at the time of execution if it were deprived of the lot." *Recent Decisions, Business Homestead—Non–Contiguous Lots*, 22 S.W.L.J. 694, 695–696 (1968) (cited approvingly in *In re Starns, supra* at 415, n. 20, and *In the Matter of Webb, supra* at 1108, n. 16). In *Ford*, the Texas Supreme Court recognized the business homestead exemption extended to two non-contiguous lots; one used as an office, warehouse, and sales area, the other as a workshop and storage area.

5. As evidence of Plaintiff's intent to claim the Edmondson Property as his homestead, Defendant cites to the fact that Plaintiff claimed the Edmondson Property as residential homestead for county tax purposes for the tax years 1982–1986. Additionally, in 1985, Plaintiff represented on a financial statement given another lender that the Edmondson Property was his homestead. Plaintiff credibly testified that he was not cognizant of a distinction between business and residential homesteads, and did not know he could claim the commercial property as homestead for county tax or any other purposes. This additional evidence adduced by Defendant is inconclusive on the issue of Plaintiff's intent to claim the Routh Street Property as his homestead.

In *In re Kennard, supra*, the Fifth Circuit points out that "under settled Texas homestead law an 'investigation of intention need not be made when the land is actually put to homestead uses. Such actual use of the land is the most satisfactorily and convincing evidence of intention.'" *Kennard* at 1459. Debtor was clearly using the Routh Street Property as his business homestead; therefore, it is not necessary to investigate Plaintiff's intention.

manufactured window treatments, (including, but not limited to, blinds, shades, and draperies). Since 1978, ESI has occupied thirty percent of the Routh Street Property.[6] From that site, ESI has conducted its own showroom operations, coordinated the business activities of Plaintiff's other ventures, and stored accounting records there.

In the early 1980's, in an effort to capture a greater share of the wholesale trade, ESI expanded its business organization to include two manufacturing units, Sunbelt Industries and Fabricrafters, two sole proprietorships, along with a retail component, Jonathan's Habitations. Sunbelt Industries engaged in the manufacture of pleated shades and vertical blinds. Fabricrafters manufactured draperies and soft window coverings. Each of these ventures operated from leased premises considerably larger than the space occupied by ESI, had larger payrolls, and had physically adapted their facilities for manufacturing and/or retail activities.

Jonathan's Habitations, a sole proprietorship, was comprised of three to four stores throughout the Dallas area engaged in the retail sale of furniture, window treatments, and related accessories.

There is no dispute that Sunbelt, Fabricrafters, and Jonathan's Habitations aided the business of ESI through their related operations. However, their operations were not "essential to and necessary for" ESI's business. In every respect, they were collateral to or auxiliary to ESI. ESI and Plaintiff, through the 1982 and 1985 Team Bank loans, advanced the startup working capital for the other ventures, and continued to loan them funds throughout their existence. Additionally, ESI acted as a vendor for Sunbelt and Fabricrafters marketing not only the window treatments of other manufacturers, but those of its own manufacturing units.

The financial statements of all the ventures consistently reflect that ESI was the principal business of Plaintiff. The other business units, in the aggregate, never equalled ESI's gross revenues. For the period 1982–1984, ESI's gross receipts totalled between $1.7 and $1.9 million, while those of the other ventures, excluding Fabricrafters, individually averaged roughly $560,000 over that same period. (DXs 10–12, 15–16, 18–20, 23–24). Sunbelt, Fabricrafters, and Jonathan's Habitations were burdened with significant overhead costs, and consistently produced negative net income.[7] The satellite character of those operations is best evidenced by the fact that the assets of those ventures were sold and their operations terminated by 1986.[8] Meanwhile, the character of Plaintiff's business, ESI, was not interrupted by the demise

---

6. During that period, and continuing throughout the present, ESI occupied 800 feet of the Routh Street Property, renting the remainder to unrelated businesses. That usage, in and of itself, is sufficient to impress the entire property with a business homestead character. *Billings v. Matlage,* 36 Tex.Civ.App. 619, 82 S.W. 805 *(1904, no writ)* (where a building was an entirety, occupancy sufficient to exempt any portion of it as a business homestead, operated to exempt the whole); *Cooper Grocery Co. v. Peter,* 35 Tex.Civ. App. 49, 80 S.W. 108 (1904, writ ref'd) (same); *Brennan v. Fuller,* 14 Tex.Civ.App. 509, 37 S.W. 641 (1896, no writ) (same); *Hinzie v. Moody,* 13 Tex.Civ.App. 193, 35 S.W. 832 (1896, writ refused) (same). The only limitation on the business homestead exemption under these circumstances, is that any rentals received from the property, not part of the principal business activity, are subject to execution, and therefore not exempt. *Hinzie, supra,* 35 S.W. at 834.

The fact Debtor leased the Routh Street Property to ESI, a corporation wholly-owned and operated by him did not affect the property's homestead character. It retained its homestead status. *In re John Taylor Co.,* 935 F.2d 75 (5th Cir.1991).

7. Defendant contends that weight should be given to the fact that Sunbelt, Jonathan's Habitations, and Fabricrafters had greater fixed assets than ESI. However, the financial statements do not bear this out. With slight variances, ESI and Sunbelt had a roughly equivalent fixed asset value (ESI, $205,000; Sunbelt, $235,000). (DXs 10–12, 14–16). However, the $90,000 purchase price for which Sunbelt's fixed assets were sold in 1984, suggests a better indication of the true fair market value of its assets. (DX 14). Fabricrafters booked its fixed assets as having a value of roughly $25,000, equal to the price Plaintiff paid for the assets in 1983. (DXs 22–24).

8. Sunbelt Industries was sold as a business in August 1984. (DX 14). Fabricrafters sold all of its assets in 1986 for an undisclosed amount, and terminated its business activity. Jonathan's Habitations, after suffering net losses averaging $170,000 a year, closed all of its stores in 1984, after only three years of operations.

of the other operations, and, in fact, ESI is the only business ·Plaintiff has continued to operate to the present. In accordance with *Ford v. Aetna Ins. Co.*, ESI has constituted the principal business of Plaintiff at all material times.[9]

### Equitable Estoppel

Defendant next argues that Plaintiff is estopped to claim the Routh Street Property as his homestead. In this regard, Defendant points principally to the homestead affidavits executed by Plaintiff.

 The first homestead affidavit was signed more than three years after the 1982 loan transactions, as part of a $12,000 loan request; the other was executed six years later, at the time of the Team Bank loan consolidation. In both executed· homestead affidavits, Plaintiff disclaimed the homestead character of the Routh Street Property. The fact the homestead disclaimers were signed well after the 1982 loans, in and of itself, prevents them from operating as an estoppel in connection with $200,000 of the indebtedness. However, even as to the new advances made after 1985, in the amount of $54,253.28, no estoppel exists. *In re Niland*, 825 F.2d 801 (5th Cir.1987); *In the Matter of Kennard*, 970 F.2d 1455 (5th Cir.1992). The

Fifth Circuit, in both *Kennard* and *Niland* points out that a debtor cannot be estopped by reason of a prior designation or prior disclaimer from asserting homestead rights in land that he has continuously and openly lived on and used, and occupied as his homestead. The estoppel doctrine does not come into effect when, as here, the homestead claimant is in possession of the property. *In re Nelson, supra* at 846. It is undisputed that ESI has conducted its business from the Routh Street Property openly and continuously from 1978 to the present.

 Likewise, by reason of *Niland,* acknowledgements of lien validity contained in Defendant's deeds of trust are not entitled to any effect. The Routh Street deeds of trust, with respect to the 1982, and 1985 loans, are four pages of fine print. (DXs 30, 35, 42, and 48). The deeds of trust merely acknowledged that the liens granted against the Routh Street Property are valid and subsisting.[10] These statements contained in the 1982 and 1985 deeds of trust were not highlighted or otherwise emphasized in the text. At the time the deeds of trust were executed, Debtor was in open possession of the Routh Street Property. Neither the homestead disclaimers nor the acknowledgements in the deeds of trust are binding upon Plaintiff.[11]

---

9. Though this Court has recognized and applied *Ford* as the controlling precedent, it notes that, on at least one occasion, the Fifth Circuit recognized that where a debtor maintains several businesses at different locations, he has the right to elect which of these places is to be considered his principal place of business. *Gulbransen Co. v. Couch*, 61 F.2d 932 (5th Cir.1932); *see also, Parrish v. Frey*, 18 Tex.Civ.App. 271, 44 S.W. 322 (1898, writ ref'd). The Fifth Circuit reasoned, in *Gulbransen*, that the purpose of homestead law, which favors the welfare of the family, would best be served by permitting the debtor to elect in which place he would earn his livelihood. At all times, ESI has complied with the broad construction of the term "business" or "calling" identified by Texas courts. Those courts have defined the term to "embrace every legitimate application in life by which honest support for the family may be obtained." *Postal Savings and Loan Ass'n v. Powell*, 47 S.W.2d 343, 352 (Tex. Civ.App.—El Paso 1931, writ ref'd). The Routh Street Property which housed ESI qualifies as a business homestead under either of the methods by which the principal business of a debtor is determined.

10. Only the 1985 deed of trust, executed in connection with the $12,000 loan to Plaintiff, required Plaintiff to warrant that no part of the Routh Street Property constituted Plaintiff's residential or business homestead. (DX 48).

11. Defendant, in addition to its other arguments, relies upon a line of Texas cases holding that, where property is being used in an ambiguous manner as to render its homestead status doubtful, a homestead claimant may be estopped to deny the truth of his homestead declaration. *In re Nelson, supra* at 846; 43 Tex Jur 3d, Homestead § 137 at p. 627. In *Nelson*, the debtor operated a medical clinic in an urban area. At the time he sought money from a lender, he listed as his residence a rural address in another county. Since the right to a business homestead is available only as part of an urban homestead, the debtor's actions, in representing to the bank that he resided and claimed a rural homestead, estopped Nelson from later asserting that these were not the true facts. No such misrepresentations or contradictions exist here. From 1982 to 1986, the Edmondson Property and the Routh Street Property were both arguably being used for homestead purposes; one, a residential

### Plaintiff's Homestead Claim is Not Barred by 12 U.S.C. § 1823(e) or D'Oench Duhme

Defendant next asserts that, because of the homestead affidavits and other written representations made by Plaintiff, Plaintiff is barred by the doctrine of *D'Oench Duhme* and 12 U.S.C. § 1823(e) from offering evidence to show that the Routh Street Property was his homestead. That position has been decided adversely to lenders in *Patterson v. F.D.I.C.*, 918 F.2d 540, 544–545 (5th Cir.1990) ("the reach of § 1823(e)" is not so broad "as to override the Texas homestead laws, including its Constitution." Homestead rights of a resident exist independent of any agreement, scheme, or bank representation). This Court is bound by Fifth Circuit precedent.[12] Plaintiff's evidence on the homestead character of the Routh Street Property was properly admitted. *In re Stephens*, 149 B.R. 414 (Bankr.E.D.Tex.1992).

### Attribution of Payments

The Court, having invalidated the liens securing $241,254.28 of the total indebtedness, now addresses the question of how payments made by Plaintiff should be allocated to the outstanding indebtedness. Contractually, the parties agreed that, to the extent that any portion of the liens against the Routh Street Property were invalidated, payments were to be applied to the unsecured portion of the indebtedness first. The relevant portion of the deeds of trust executed by Plaintiff and delivered to Defendant contains the following language:

> If the lien of this Deed of Trust is invalid or unenforceable as to any part of the debt, or if the lien is invalid or unenforceable as to any part of the mortgage premises, the unsecured or partially secured portion of the debt shall be completely paid prior to the payment of the remaining unsecured or partially secured portion of the debt, and all payments made on the debt, whether voluntary or under foreclosure or other enforcement action or procedure shall be considered to have been first paid on and applied to the full payment of that portion of the debt which is not secured or fully secured by the lien of this Deed of Trust.

Furthermore, Texas case law has established that, where liens against exempt property have been found to be partially unse-

---

homestead, the other, a business homestead. The Texas Property Code, § 41.002 expressly permits such a usage so long as the total urban homestead does not exceed one acre. Plaintiff's use of both the Edmondson Property and the Routh Street Property, falls within the one-acre usage requirement, and created no ambiguity as to the homestead status of the mortgaged land. Tex.Jur.3d, Homestead § 137 at p. 627–628.

12. Defendant cites *Buchanan v. FDIC*, 935 F.2d 83 (5th Cir.1991), *cert. den'd*, —— U.S. ——, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991), and *In the Matter of Smith*, 966 F.2d 973 (5th Cir.1992), in support of its position that the doctrine of *D'Oench Duhme* bars Plaintiff from asserting the validity of Defendant's liens on Plaintiff's homestead. Both *Buchanan* and *Smith* are inapposite. Both consider whether valid mechanic's liens properly recorded against a homestead claimant's property are subject to later challenge.

*Buchanan* and *Smith* fall within a special exception to the state's "paternalistic policy towards homestead rights" not present under the facts of this case. *Smith* at 977. Under Texas law, homestead owners may not be estopped from asserting the invalidity of a lien on their homestead except in three cases:

(1) When the owners, not actually occupying the property, or so using it that its status is dubious at the time the mortgage is executed, represent that it is not their homestead;

(2) When the owners create a lien by entering into a simulated transaction which has all the outward appearance of a valid, unconditional sale, but which is in fact a mortgage; and

(3) When the owners represent that existing notes are valid mechanic's lien notes for improvements, secured by a mechanic's lien contract properly executed.

The exception for valid mechanic's liens to homestead rights has been explained in *Smith* as follows:

> [i]t has long been held that when owners of a homestead represent that existing notes are valid mechanic's lien notes for improvements, secured by a mechanic's lien contract properly executed, and thereby induce innocent third parties to invest funds on the faith and credit of such liens, they are estopped as to such third parties to plead that the lien is invalid.

*Smith* at 977, quoting *Mazow v. Brazle*, 337 S.W.2d 734, 737–38 (Tex.Civ.App.—Eastland 1960, no writ).

The circumstances of the case at hand do not satisfy the requirements of any of the named exceptions to the estoppel doctrine.

cured, payments by the borrower are first applied to the unsecured portion of the indebtedness. *See, In re Moore,* 110 B.R. 255 (Bankr.N.D.Tex.1990); *Bancroft v. Welch,* 250 S.W.2d 285 (Tex.Civ.App.—Eastland 1952, no writ); *Foxworth–Galbraith L. Co. v. Southwestern Contracting Corp.,* 165 S.W.2d 221 (Tex.Civ.App.—Ft. Worth 1942, writ ref'd w.o.m.).[13]

Accordingly, all payments received by Defendant should be applied first to the unsecured portion of the remaining indebtedness owed to it.

### *Conclusion*

Both the facts and the law support Plaintiff's entitlement to a business homestead on the Routh Street Property. Defendant had actual knowledge of the use of the funds, and that the property met the qualifications of a business homestead under Texas law at the time of the loans. Plaintiff's right to a business homestead is not barred by the doctrine of equitable estoppel or *D'Oench Duhme.* The Court declares that all liens of Defendant, except to the extent of purchase money liens, or monies advanced for the payment of taxes, are invalid against the property. In addition, the $15,000 in payments made by Plaintiff on the Consolidated Note are to be credited and applied against the unsecured indebtedness remaining due and owing.

---

**13.** Plaintiff cites *In re Bobbitt,* 3 B.R. 372 (N.D.Tex.1976), and asserts that he has the equitable right to require application of payments in a manner which best preserves the exempt property. In essence, Plaintiff requests the Court to credit the $15,000 in payments received against the remaining secured portion of the indebtedness, $43,000. *Bobbitt,* however, is inapplicable.

Resort to equitable principles is not proper where a specific contract governs. In the case at hand, the deeds of trust provided for the attribution of payments in the event the loans were later held partially secured. In light of the parties' contractual agreement, equitable principles do not control. *In re Moore, supra.*